In the Matter of the Probate of the Alleged Last Will and Testament of HUGH H. WILLIAMS, Deceased.

Surrogate's Court, Oneida County, July, 1923.

**Wills — contested probate — lost will revoking prior will — will once revoked must be republished — evidence — probate denied.**

A will once revoked cannot be revived except by its republication in the presence of the attesting witnesses.

The petitioners offer for probate a will properly executed by the deceased on August 25, 1915. Contestants object to its probate on the ground that a later will was executed by deceased on or about August 27, 1920. The later will cannot be found.

From the evidence it appears that deceased on or about March 7, 1920, went to a lawyer's office and a draft of a new will was prepared; that on August 27, 1920, the deceased and his son returned to the lawyer's office, the draft of the new will was produced and after some conversation between the deceased and his son in the presence of the lawyer in regard to certain changes to be made the lawyer dictated to his stenographer one page of the new draft which was typewritten and attached to the second page of the original draft, making an instrument of two

sheets. The proposed will was then read aloud to the deceased by the lawyer, including the attestation clause, and duly executed before the lawyer and his stenographer as witnesses. Contestants offered in evidence a carbon copy of the first sheet of the alleged new will and the second sheet of the original draft of the new will made in March, 1920. The last sentence of the first sheet ends in the middle of a sentence and when attached to the second sheet makes a complete sentence. The copy of the missing will contains a clause revoking the will offered for probate. The son of the deceased qualified as a witness in the probate proceedings by releasing his interest in the estate. *Held*, that the lost will mad) by deceased on August 27, 1920, was a valid will which revoked the prior will now offered for probate; that the prior will is void and that the proceedings to probate it are dismissed.

Proceeding to probate will.

*Willis & Guile*, for Mary Williams and Clarence H. Williams, proponents.

*Coley & Kiley*, for Gomer E. Williams and Evan J. Williams, contestants.

Evans, Special S. Hugh H. Williams died in the city of Utica, Oneida county, N. Y., on or about the 14th day of November, 1922, leaving him surviving a widow, Mary Williams, and two sons, Gomer E. and Evan J., being his sole heirs at law and next of kin.

The will offered for probate by the petitioners named therein as executors bears date the 25th day of August, 1915, and is properly executed as a last will.

Objection to its probate is made by the two sons of the deceased who claim that a later will was made by him on or about the 27th day of August, 1920, which revoked the will now presented for probate. Contestants have been unable to find and produce the alleged later will although what is claimed to be a copy of a draft of it has been introduced in evidence. The petitioners have introduced evidence tending to prove that the deceased was mentally unsound on the date when the missing will is claimed to have been executed and that he did not at the time possess testamentary capacity.

The will offered for probate specifically provides that the two sons of the deceased shall take no part of the property and that the widow shall take such portion of his estate as provided by law. The property is devised and bequeathed to three grandchildren of the deceased, being the children of the son Gomer.

It appears from the evidence that the deceased on or about the 7th day of March, 1920, went to the office of Dunmore, Ferris & Dewey, of Utica, N. Y., who were attorneys for the Citizens Trust Company of that city and having offices in the same building. On this occasion a draft of a new will, at the direction of the

deceased, was prepared by Mr. Hughes who was connected with the office.

On August 27, 1920, the deceased in company with his son Evan went to the same law office and at the request of the deceased, Mr. Dewey, one of the firm, produced the draft of the will that had been prepared the previous March. The deceased and his son conversed in the presence of Mr. Dewey and the stenographer with reference to a proposed change in the draft of the will. The son expressed a desire on his part that the draft of the will be changed making a more favorable provision for the wife of the deceased. Mr. Dewey then dictated to the stenographer one sheet or page of a new draft which embodied the desired change and it was typewritten and attached to the 2d page of the original draft, making an instrument consisting of two sheets. According to the testimony of the son Evan, the proposed will was read aloud to the deceased by Mr. Dewey, including the attestation clause. The deceased then signed it and declared it to be his last will and testament and requested Mr. Dewey and the stenographer to sign as witnesses, which they did.

The testimony of both the witnesses Evan J. Williams and Mr. Dewey was taken and received under objections and decision as to its admissibility was reserved by the court. The witness Evan J. Williams filed with the court a release of his interest in the estate which I think qualified him as a witness and his evidence stands. *Loder* v. *Whelpley*, 111 N. Y. 239.

Mr. Dewey testified to about the same facts as did the witness Evan Williams except that he was unable to recall whether or not the deceased actually signed and published the will and that he and the stenographer signed as witnesses. The rule is well established that where an attorney acts as a witness to a will communications between him and the testator are not privileged. In view of the fact that there is positive and undisputed evidence that Mr. Dewey did sign as a witness to the will, I think that he was qualified as a witness and his evidence stands. *Matter of Coleman*, 111 N. Y. 220.

David G. Jones, a vice-president of the Citizens Trust Company of Utica, N. Y., testified in substance that he had been acquainted with the deceased for several years and that the deceased consulted him about making a will and was referred by Mr. Jones to the law firm of Dunmore, Ferris & Dewey, attorneys for the trust company; that on or about the 27th day of August, 1920, the deceased came to the trust company and left with him a will; that Mr. Jones is and was familiar with wills and that he examined it and says that it was a will and also that the deceased referred to

Surrogate's Court, Oneida County, July, 1923.          [Vol 121

it as his will; that an entry was made on a book of the trust company indicating the receipt by it of the will of the deceased; that in two or three days thereafter the deceased came to the trust company and requested Mr. Jones to return to him the will; that deceased stated to Mr. Jones that he went home and told his wife about making the new will and that " there was the devil to pay " as he expressed it. Mr. Jones returned the will to the deceased and took his receipt for it which is in evidence.

I appreciate that under all of the circumstances of the case the testimony of Evan Williams should be received with caution and proper scrutiny, but it seems to me that there are abundant facts which point to the absolute truth of his testimony. Forgetfulness on the part of Mr. Dewey as to whether or not the will was executed is not strange. He was and is a member of a firm of leading attorneys in the city of Utica where much legal business is transacted. For an attorney and stenographer to act as witnesses to a will prepared in the office is a natural and common occurrence. The production of a carbon copy of the first sheet of the will is significant. The last sentence of the sheet ends in the middle of the sentence and when attached to the second sheet of the original draft made in March makes a complete sentence. It is unreasonable to suppose that the deceased would take to the Citizens Trust Company for safekeeping a mere draft of a will unsigned and unwitnessed and neither would he have termed it a will as testified to by Mr. Jones. The first draft of the will made in March was left in the office of his attorneys from March to August. The will after execution naturally was left for safekeeping with the executor named there. It seems to me clear that the deceased knew just what he had done. He would not have told his wife about drawing a new will unless he had in fact done so. His haste in seeking possession of the new will and his explanation to Mr. Jones of the reason seems probable and logical.

Mary Williams, the widow of deceased, was sworn as a witness for the petitioners and filed a release of her rights in the estate. She testified as to conversations and transactions with the deceased but did not deny the incident or conversation about the new will which deceased related to Mr. Jones. Further, there is the receipt for the will executed by the deceased to the Citizens Trust Company.

The copy of the missing will contains a revocation clause and its provisions are entirely different from those of the will offered for probate, so that there exists in my mind no doubt that the deceased intended to and did make a new and valid will which revoked the former will bearing date the 25th day of August, 1915, and now offered for probate. I believe that it is a natural inference to be

drawn from all the circumstances that the deceased destroyed or caused to be destroyed the will executed August 27, 1920, and supposed that the former will had been revived. There was nothing done by the deceased to legally revive and republish the will of August 25, 1915, and the law seems to be settled that a will once revoked cannot be revived except by its republication in the presence of the attesting witnesses. *Matter of Stickney*, 161 N. Y. 42.

Evidence was offered on the part of the petitioners tending to prove that the deceased was mentally incompetent to make a valid will on August 27, 1920, the date of the execution of the missing will, and that he lacked testamentary capacity. The deceased was a man past eighty years of age. He transacted business at his bank, employed and gave directions to men about painting his house, repairing the walls and chimney, made purchases at the stores, rode alone on the street cars and beyond spells of forgetfulness there is nothing to indicate that his mind was in any way impaired.

I, therefore, find and decide that Hugh H. Williams did on the 27th day of August, 1920, make a valid will which revoked the prior will made August 25, 1915, and now offered for probate, and that he was at the time possessed of a sound mind and had testamentary capacity; that the alleged will now before the court was revoked and is void and that the proceedings to probate it are dismissed. Costs and disbursements are allowed to the petitioners and to the contestants payable from the estate. A decree may be prepared accordingly.

Decreed accordingly.