Day, J.
 

 There are three questions presented by this voluminous record, upon which this court is asked to pass:
 

 1. May a will containing several items which have been specifically revoked by a codicil after-wards destroyed be revived by oral testimony giving verbal declaration of the intent of the testator ?
 

 2.
 
 May an attorney employed to draft a codicil to a will, which codicil has been afterwards destroyed, testify to the fact of having drawn such codicil at the request of the testator, and identify a carbon copy thereof, if such attorney does not testify to communications between the testator and himself, or his advice to the testator in the premises?
 

 3. Is it error for the trial court in a will contest to refuse to give the following instruction before argument:
 

 “I charge you that in the determination of the question submitted as to mental capacity and undue influence, you should consider the age of the testator, his physical and mental condition at and before the time the purported codicil was executed, his habits and associations, his relations to the parties in interest, his affections toward them, their claim upon his bounty, the character and extent of his property, and the disposition made of it in his will and codicil thereto as set forth in ‘Exhibit A,’ and as also set forth, as you may find from the evidence in the alleged codicil so made on May
 
 *116
 
 20, 1919, and whether sneh disposition was reasonable and natural or otherwise, his previous intentions as expressed by himself to others, or shown by his conduct, and any and all facts and circumstances shown in evidence bearing upon the questions, and if you find by the weight of the evidence that Samuel Collins did not have sufficient mind and memory to form an intention and purpose to dispose of his property by will or codicil on the 20th day of May, 1919, then your verdict shall be in favor of the will and codicil as set forth in ‘Exhibit A’ herein.”
 

 Taking these subjects in their order.
 

 1. May a will containing several items which have been specifically revoked by a codicil after-wards destroyed be revived by oral testimony giving verbal declaration of the intent of the testator?
 

 The only testimony in the entire record upon this point is found in the testimony of Perry Collins, which is as follows:
 

 “Q. Mr. Collins, on cross-examination the other day in this case, you were asked about the time that you were at Mr. Richie’s office at the time this paper called the codicil made a,t the City Bank was taken off; now, then, tell the jury just what was said and done there that day at Mr. Richie’s office. A. My father took the paper up there into Mr. Richie’s office and handed it to Mr. Richie and told him to read it over slowly and explain what that was on there, pasted on there; Mr. Richie did so and explained it to him and he says. ‘Sam, is this what you want on there?’ And Sam says, ‘No,’ he says, ‘remove it.’ And now Mr. Richie says to him. ‘Uncle Sam, this leaves
 
 *117
 
 this here original jnst the same as you first made the will.’ He says: ‘That is the way I want it; I want you to put that will in your safe, lock it up and let no one have it, and after I am gone I want you to probate it,’ And he says in explaining it, that Mr. Eichie — ”
 

 We are unable to find any case adjudicated by this court bearing upon the first question raised since the decision made in 1836 in
 
 Lessee of Reynolds
 
 v.
 
 Shirley, 7
 
 Ohio, pt. 2, 39, and none since the passage of section 10562, General Code, the original of which was passed in 1840, 38 Ohio Laws, 120 (126), section 42.
 

 A brief review of the law with reference to revivor of a first will revoked by the execution of a subsequent one is not out of place.
 

 The subject has received a good discussion in the case of
 
 Bates
 
 v.
 
 Hacking, Exr.,
 
 28 R. I., 523, 29 R. I., 1, 68 Atl., 622, 125 Am. St. Rep., 759, 14 L. R. A. (N. S.) 937, and in the opinion this language is used:
 

 “The authority to make a will is purely statutory. The ¡Statute of wills, 3'2 Hen. VIH, cap. 1, section 2, contained no provisions on the subject of revocation. In the absence of such provision the courts evolved a set of rules to govern the subject, founded upon the theory that the testator’s intention to revoke, whether express or implied, should control. Naturally, in these circumstances, implied revocations became common, and interested parties were sometimes unable to resist the temptation to fabricate evidence of the declarations of the testator for the purpose of defeating his will.
 

 
 *118
 
 “Finally, the injustice of permitting written instruments to he destroyed by oral evidence became so apparent that parliament enacted the statute of frauds; 29 Car. II, cap. 3, whereof sections 6 and 22 related to the revocation of wills and testaments.
 
 * * *
 

 “The confusion concerning revocation and revival of wills, that is to be found in the decided cases, has arisen from a misconception of the subject. The statute of frauds relating to revocation of wills was passed to
 
 maintain
 
 wills and prevent their revocation except as therein provided. But even after its passage the courts, ecclesiastical and of common law, did not agree in their interpretations, and the question of the revival of revoked wills was raised and became a potent factor in the confusion; this state of affairs continued in England until the 'Statute I Viet. cap. 26, section 22, was passed, which provided for the revival and republication of revoked wills.”
 

 This statute ’Victoria I, chapter 26, section 22, passed in 1838, provided that no will or codicil or any part thereof which should be in any manner revoked should be revived otherwise than by the re-execution thereof.
 

 The courts in this country have reached various conclusions upon this subject, depending in great measure upon whether or not statutory enactments have provided the rule for revivor, and also upon the particular language of the statute in each ease. Some states, even having no express statute, follow the rule that, where the second will contains a clause expressly revoking former wills, the execution of the second will operates as a present
 
 *119
 
 revocation of the first and that the subsequent-destruction of the second does not revive the first, and that oral declaration to that effect is not sufficient. Da
 
 nley
 
 v.
 
 Jefferson,
 
 150 Mich. 590, 596, 114 N. W. 470, 121 Am. St. Rep. 640, 13 Ann. Cas. 242;
 
 In re Noon’s Will,
 
 115 Wis. 299, 91 N. W. 670, 95 Am. St. Rep. 944.
 

 Another group of states holds that where the testator destroys the revoking will for the purpose of reinstating a former will, the former will remains in full force and effect. This conclusion is reached upon the theory that the will is ambulatory and does not take effect until the death of the testator. Where the testator destroys the revoking will in his lifetime, it never goes into effect for any purpose, and the prior will remains of the same force and effect as if the revoking will had never existed.
 
 Moore
 
 v.
 
 Rowlett,
 
 269 Ill. 88, 109 N. E. 682, L. R. A. 1916C, 89, Ann. Cas. 1916E, 718;
 
 Flintham
 
 v.
 
 Bradford,
 
 10 Pa. 82;
 
 Randall
 
 v.
 
 Beatty,
 
 31 N. J. Eq. 643.
 

 Another group of cases holds that the fact that the testator destroyed the revoking will and did not destroy the first will is
 
 prima facie
 
 evidence that he intended that the prior will should remain in force. This presumption, however, may be rebutted.
 
 Colvin
 
 v.
 
 Warford,
 
 20 Md. 356;
 
 McClure
 
 v.
 
 McClure,
 
 86 Tenn. 173, 6 S. W. 44.
 

 Still another group of cases adheres to the doctrine of the ecclesiastical courts that the intention with which the testator destroyed the revoking will determines whether the prior will remains in force; that his intention is to be adduced from the evidence; and that the act of destroying the revoking
 
 *120
 
 will creates no presumption either way. The states in which the following cases arose seem to follow this rule:
 
 Pickens, Admr.,
 
 v.
 
 Davis,
 
 134 Mass. 252, 45 Am. Rep. 322;
 
 Williams
 
 v.
 
 Miles,
 
 68 Neb. 463, 94 N. W. 705, 96 N. W. 151, 62 L. R. A. 383, 110 Am. St. Rep. 431, 4 Ann. Cas. 306;
 
 In re Gould’s Will,
 
 72 Vt. 316, 47 Atl. 1082. In the latter case the authorities are discussed and analyzed with much clarity.
 

 All the authorities,. however, recognize that in those states which have recognized the English statute of Victoria the effect of the execution and subsequent destruction of a revoking will upon a prior will must be regulated by such statutory provision. Among these states are New York, Ohio, Indiana, Missouri, Kentucky, California, Arkansas, and Virginia.
 

 The provision of the General Code of this state, section 10562, applicable to the situation presented, is as follows:
 

 “After making a will, if the testator duly makes and executes a second will, the destruction, canceling, or revocation of the second will, shall not revive the first will unless the terms of such revocation show that it was his intention to revive and give effect to his first will; or, after such destruction, canceling, or revocation, he duly republishes his first will.”
 

 This provision, with very slight change in phraseology, but not in the meaning of the words or material parts, is the same as section 42 of an act “relating to wills,” passed March 23, 1840 (38 Ohio Laws, 120, 126). The statute of Victoria-had then been in force two years, and we think
 
 *121
 
 our statute was in effect an adoption of the statute of ‘Victoria.
 

 By an investigation of similar provisions in statutes of other states whose will acts are similar to ours, we are furnished with some guide for an interpretation to our own.
 

 A comparison of the statutes of New York will show that our statute is in language quite like the provisions of the statute of that state, and that its law with reference to the execution of wills is similar to our own.
 

 In the Matter of the Will of Stickney,
 
 161 N. Y. 42, 55 N. E. 396, 76 Am. St. Rep. 246, the following state of facts required the court to pass upon the statute of that state, which, as above stated, is
 
 verbatim et literatim
 
 with our own:
 

 Jonas Stickney executed two wills. The first was destroyed by his direction. Subsequently he executed a third will, but destroyed it the same day it was executed, saying he thought he would keep his old will. Afterwards he sent for the second will, read it, and declared in the presence of two witnesses, “This is my last will and testament and is just as I want it.” Neither of these witnesses was a subscribing witness to the second will.
 

 After analyzing the statutes the N. Y. court says at page 45 of 161 N. Y. (55 N. E. 396, 76 Am. St. Rep. 246):
 

 “Therefore, the precise question to be determined is whether the declaration of the testator to persons who were not witnesses to his will was a republication thereof within the provisions of this statute.
 

 “In determining the meaning of the statute as
 
 *122
 
 to the republication of a will which has been revoked, it is proper to first consider the requirements of the statute in regard to the publication of a will. To render the execution of a will effectual, the testator must declare the instrument to be his last will and testament in the presence of at least two subscribing witnesses. It is manifest that such a declaration by the testator to two or even more witnesses who did not subscribe or attest the will, would not be a sufficient publication of it under the statute. The publication must be in the form of a declaration or other communication to the attesting witnesses.
 

 “With a clear understanding of the requirements necessary to the proper publication of a will, we are to interpret the provision of the statute relating to the republication of such an instrument. Is it to be supposed, after all these formalities and safeguards have been provided by statute as to the publication of a will, that a will which has been revoked, so that it is not a will at all, can be revived with less formality or with less or a different kind of proof than would be required to establish its first publication? We think not.
 

 “To publish a will, certain requirements must be observed, which are plainly pointed out in the statute, and when an inoperative and thus invalid will is required to be republished, before it becomes effective, we think the same formalities as to its publication must be observed. So far as its publication is concerned, a revoked will is as if it had never been published. If this will had been executed, but not published, it would hardly be claimed that its publication could be established by
 
 *123
 
 proof of the testator’s declaration to others than the witnesses who subscribed it. We see no reason why the requirements applicable to the publication of a will should not equally apply to its republication. Any other rule would be in conflict with the obvious spirit and purpose of the statute, and would destroy the safeguards against fraud and improvidence by which the making and publication of wills have been so carefully guarded.
 

 “We are of the opinion that it was the intent of the Legislature by this statute to require the same formalities and the same proof to establish a republication of a will as are plainly required to establish its original publication, and, hence, that a will which has been revoked can be revived only by its republication in the presence of its attesting witnesses.”
 

 This rule has been recognized in New York state in the following cases, as set forth in 28 A. L. R. 922:
 

 “It is stated in
 
 Re Brewster
 
 (1902) 72 App. Div. 587, 76 N. Y. Supp. 283, that, in order to reestablish the first will, it should have been republished with the same formalities that are required in the execution of a will. The oral declaration of the testator in the presence of one of the subscribing witnesses to the earlier will, that he desired to have the earlier will probated as his will, does not have the effect to revive that will.
 
 Re Kuntz
 
 (1914) 163 App. Div. 125, 148 N. Y. Supp. 382. The court in this case says that it is settled that the words ‘terms of such revocation’ mean a revocation in writing; also that an effective republication must be in the presence of those who
 
 *124
 
 subscribed to tbe original will, as required for the original publication. In
 
 Re Williams
 
 (1923) 121 Misc. 243, 201 N. Y. Supp. 205, the court, citing
 
 Re Stickney
 
 (N. Y.),
 
 supra,
 
 says: ‘The law seems to be settled that a will once revoked cannot be revived except by its republication in the presence of the attesting witnesses.’ ”
 

 In the matter of Stickney’s Will,
 
 mentioned above, is cited in the following cases with approval:
 
 Pardee
 
 v.
 
 Kuster,
 
 15 Wyo., 368, at page 380, 89 Pac., 572, 91 Pac., 836;
 
 In the matter of the Will of Barnes,
 
 70 App. Div., 523, at page 526, 75 N. Y. Supp., 373;
 
 In re Forbes’ Will,
 
 24 N. Y. Supp., 841;
 
 In the matter of the Will of Campbell,
 
 170 N. Y., 84, at page 86, 62 N. E., 1070;
 
 Osburn
 
 v.
 
 Rochester Trust & Safe Deposit Co.,
 
 152 App. Div., 235, at page 239, 136 N. Y. Supp., 859;
 
 In the matter of the Will of Brewster,
 
 72 App. Div., 587, at page 588, 76 N. Y. Supp., 283;
 
 In the matter of the Will of Kennedy,
 
 30 Misc. Rep., 1, at page 8, 62 N. Y. Supp., 1011;
 
 In the matter of the Will of Wylie,
 
 162 App. Div., 574, at page 586, 145 N. Y. Supp., 133;
 
 In the matter of the Will of Kuntz,
 
 163 App. Div., 125, at page 126, 148 N. Y. Supp. 382.
 

 This doctrine has been followed in other states where the statute of Victoria has been recognized. In Indiana the statute is as follows:
 

 “And if, after the making of any will, the testator shall execute a second, a revocation of the second shall not revive the first will, unless it shall appear by the terms of such revocation to have been his intent to revive it, or, unless after such revocation he shall duly republish the previous will.” Section 2729, Burns’ 1894.
 

 
 *125
 
 In that state it is held:
 

 “The first will having been effectually revoked, it could he revived only (1) by a writing executed by him for that purpose, signed, subscribed, and attested, as in the case of a last will; or, (2) by due republication of such previous will.”
 
 Kern
 
 v.
 
 Kern,
 
 154 Ind.
 
 29,
 
 37, 55 N. E. 1004, 1007.
 

 To the same effect are the following cases in states where the statute is similar to that of Ohio:
 
 In re Lones’ Estate,
 
 108 Cal. 688, 41 Pac. 771;
 
 Barker
 
 v.
 
 Bell,
 
 46 Ala. 216;
 
 Means
 
 v.
 
 Ury,
 
 141 N. C. 248, 53 S. E. 850;
 
 Witter
 
 v.
 
 Mott, 2
 
 Conn. 67; Alexander on Wills, section 564; 28 R. C. L. 194, 195; 40 Cyc. 1213; 76 Am. St. Rep. 257, 258, 259;
 
 28
 
 A. L. R. 921, 922.
 

 Judge Rockel, in his work on Ohio Probate Practice (2d Ed.), referring to section 10562, at page 957, section 1054, says:
 

 “It is the object and purpose of the above section to settle this question in Ohio and therefore here the destruction of such second will does not revive the first, unless it appear by the terms of such revocation that it was the intention of the testator to revive and give effect to the first will, or by republishing his first will.”
 

 “The question might arise what is meant by the statute when it says ‘unless it appear by the terms of such revocation that it was his intention to revive and give effect to his first will.’ How is this intention to be manifested? It seems, taking into consideration the entire policy of the statute of the wills that this intention can only be made effective if it is done in writing, and in the same manner that a new will might be executed. In
 
 *126
 
 other words, that when a will is once revoked it cannot be revived except it be in effect re-signed, re-witnessed and re-published.”
 

 See Page on Wills, section 274.
 

 This construction of the statute has heretofore received judicial interpretation in the trial courts of this state, by Baldwin, J., in the case of
 
 Crane
 
 v.
 
 Tunkey,
 
 Wood County Common Pleas Court, 11 Ohio Law Rep. 454, 457:
 

 “Now where the revocation is effected by a subsequent will there can be no revivor of the former will unless by the terms of the revocation it is shown that it was the intention of the testator to revive and give effect to his first will. Now, this intention can only be gathered from the instrument itself. It cannot be gathered by any parol testimony, because if that were permitted it would be the resting of a will in parol, precisely the same as if there had been no writing.”
 

 Without giving further reference to decisions in other states, we have concluded to follow the principle announced in
 
 Matter of Stickney, supra,
 
 and we believe the principle to be in accord with the doctrine announced in
 
 Reynolds
 
 v.
 
 Shirley, supra.
 
 In that case it was held that a reacknowledgment in writing on the will itself which is signed by the attesting witnesses was a good republication and that it was unnecessary for the testator to sign the will again or the acknowledgment. This recognizes that to constitute a valid republication the testator must acknowledge the instrument to be his last will before the witnesses who have already signed his will, or, if before
 
 other witnesses,
 
 then these witnesses must sign the will at the re
 
 *127
 
 quest of the testator. If a separate written instrument is relied upon to show such intention to revive the revoked will, that instrument should be signed and acknowledged by the testator in the presence of the witnesses who sign the same.
 

 Our conclusion, therefore, is that the oral declarations made by Samuel Collins at the time of the destruction of the second codicil were not enough to revive his first will, unless the same were made before the same individuals who were the attesting witnesses to his first will, and that if he depended upon the witnesses present at the time of the oral declaration of his intention to revive his first will it was necessary for such witnesses to sign as witnesses to the declaration of his intention, although not necessary for the testator himself to have re-signed.
 

 In the light of this record, we are therefore not prepared to find that the instruction of the trial court as to the steps necessary to revive the first will after the destruction of the revoking codicil was prejudicially erroneous.
 

 There is a further question that suggests itself as to the effect of the testimony of the witness, Perry Collins, who was the only witness offered in support of the republioation or revivor of the first will. An examination of the record discloses that the effect of the revivor of the first will was to give most of the estate to said witness, Perry Collins, practically the entire estate. The question that arises is: Would a person who would be practically the sole devisee and legatee under revivor of a will be a good attesting witness?
 

 
 *128
 
 Our. statute with reference to wills, section 10515, Cene ral Code, provides:
 

 “If a devise or bequest is made to a person who is a witness to the will, and the will cannot be proved except by his testimony, the devise or bequest shall be void. The witness shall then be competent to testify to the execution of the will in like manner as if such devise or bequest had not been made. If he would have been entitled to a share of the testator’s estate, in case the will was not established, he shall have so much of such share as does not exceed the bequest or devise to him.”
 

 It would therefore seem that if the testimony of a devisee and legatee is relied upon to show the revivor or republieation of a first will that he should be under no greater disability. than an attesting witness to the will, because the policy of the law is to regard a will as one of the most solemn instruments known to the law and to protect and hedge about its execution greater formality than in instruments generally. And it can hardly be said that an instrument sufficient to constitute a will, passing title to real estate and bequeathing property, requiring a signature at the end thereof, an acknowledgment by the testator in the presence of two witnesses, and publication as the last will and testament, should be capable of revivor upon the oral testimony of but a single witness, and that witness the most interested person possible, to wit, practically the sole devisee and legatee.
 

 Again, if the will in question relates to personal property alone, and is a verbal or nuncupative will,
 
 *129
 
 it has been, held in this state
 
 (Vrooman
 
 v.
 
 Powers, 47
 
 Ohio St. 191,
 
 24
 
 N. E. 267, 8 L. R. A. 39) that—
 

 “Where a verbal will is reduced to writing, and subscribed by two witnesses, one of whom is a legatee thereunder, and the other is his wife, the husband is not a competent, disinterested witness, within the meaning of section 5991 of the Revised Statutes (10601, Gr. 0.), and the will is invalid.”
 

 We are disposed to think that the principle, .at least as to the personal property, might apply in the present instance. However, the question is not necessarily presented for determination at this time, and is therefore not decided.
 

 The next question presented involves the right of an attorney, who has drawn a codicil to a will for a client, to testify concerning the making of a carbon copy at the time of the making of the original for the deceased testator; that the same was prepared by him by dictating to a stenographer; that since the date of the preparation of the typewritten sheet, bearing date May 20, 1919, the copy has been in his possession; that the carbon copy was a duplicate, made by the same impression, by the same machine, by the same party, at the time of making the original; that the original was presented to the testator on the day of its execution, in the presence of two witnesses; that the original was signed by the testator in the presence of said witnesses, who acted as attesting witnesses thereto; and that the last seen of the original by the attorney who drew it was on that occasion. May such an attorney, who secured the information from which he drew the original codi
 
 *130
 
 oil from the testator, testify as to the identity of the carbon copy?
 

 With regard to privileged communications to an attorney during the preparation and execution of a will or codicil, 17 L, E. A. (N. S.) 108, states the general rule:
 

 “That unless provided otherwise by statute, communications by a client to the attorney who drafted his will, in respect to that document, and all transactions occurring between them leading up to its execution, are not, after the client’s death, within the protection of the rule as to privileged communications, in a suit between the testator’s devisees and heirs at law, or other parties who all claim under him. The reason for such an exception to the general rule excluding confidential professional communications is that the rule is designed for the protection of the client, and it cannot be said to be for the interest of a testator, in a controversy between parties all of whom claim under him, to have those declarations and transactions excluded which are necessary to the proper fulfilment of his will.”
 

 ¡See, also, 4 Jones on Evidence, section 755.
 

 Has the statute in Ohio barred this rule?
 

 Section 11494, Gfeneral Code, provides:
 

 “The following persons shall not testify in Certain respects:
 

 “An attorney, concerning a communication made to him by his client in that relation, or his advice to his client.”
 

 In
 
 Swetland
 
 v.
 
 Miles,
 
 101 Ohio St. 501, 130 N. E. 22, an action to contest the validity of the will of a testatrix, it was held that the communications
 
 *131
 
 between the attorney and the testatrix with reference to the will in question were privileged, and that by the terms of section 11494, General Code] this privilege could not be waived except by express consent of the client, or by the client volun* tarily testifying, and that an action to contest the validity of the will of a client did not nullify oí constitute an exception to this statutory rule.
 

 In view of the fact that
 
 Swetland
 
 v.
 
 Miles, supra,
 
 is a leading case in Ohio on this point, it is not out of place to state the manner in which the question was raised in that case. The record discloses the following:
 

 “Q. I believe yon stated Mrs. Thompson [the testatrix] was seated by a table and you were likewise seated near her? A. Yes, sir.
 

 “Q. And you testified also that the original will was presented to you? A. Yes, sir.
 

 “Q. And was it then signed? A. It was nott
 

 “Q. And you have also testified that she presented it to you? A. Yes, sir. * * *
 

 “Q. You may state what she said and what you said?” (Objection. 'Sustained. Exception. Offer to prove witness will testify that she inquired whether the will would be legal in its provisions equalizing her three grandchildren in the sums received and to be received from the estate of her husband and from her estate, and the witness advised her that such provisions in the will would be legal and lawful. Same excluded and exception!)
 

 “Q. In discussing this will with Phoebe Thompson, what, if any, provision of the will was your attention directed to by her?” (Objection. Sustained. Exception. Offer to prove that his afc
 
 *132
 
 tention was directed by her to the provisions of item. 6 and item 7 of the will and was requested by her to state whether the provisions in said two items 6 and 7 would be a legal and lawful disposition of her estate, and witness advised her that such disposition made in item 6 and 7 would be legal and lawful. Excluded and exception.)
 

 It will thus be noted that in
 
 Swetland
 
 v.
 
 Miles, supra,
 
 the attorney was asked to go much further than in the instant case.
 

 The question was again before the court for consideration in
 
 Knepper
 
 v.
 
 Knepper, Exr.,
 
 103 Ohio St. 529, 134 N. E. 476, wherein the doctrine of
 
 Swetland
 
 v.
 
 Miles
 
 was adhered to; but an exception was recognized where the attorney is one of the attesting witnesses, it being held that—
 

 “When a testator procures his attorney as a subscribing witness to his will he by that act expressly consents that the attorney may testify as fully as any other subscribing witness touching the capacity of the testator or any other fact affecting the validity of the will.”
 

 Now, it does not appear by this record that the attorney who was testifying, Mr. William H. Leete, was a subscribing witness to the codicil to the will of Samuel H. Collins, so that the benefit of the exception of the rule in
 
 Knepper
 
 v. Knepper,
 
 Exr., supra,
 
 does not apply, and the witness stood simply in the relation of attorney and client to tbe testator Samuel H. Collins at the time of the drawing and execution of the codicil in question.
 

 If by the statute and the decisions of this court the attorney could not testify to any communication made to his client, or any advice given in the
 
 *133
 
 premises, it would seem to follow that he would likewise be incapacitated from testifying to the direct results of such communication between himself and his client, and it cannot be gainsaid that the contents of the codicil were the result of the communication between the testator and the attorney, because the attorney must have obtained the information from the testator, and it must have been what the testator wanted put in the codicil by his attorney; so that, reduced to its last analysis, the codicil and copy thereof are the direct result of the communication between client and counsel, only the communication in another form, which the statutes say is privileged. By identifying and testifying to the copy of the codicil, the attorney is in effect testifying to the communications which he received from his client.
 

 To permit his testimony we think is in violation of section 11494, General Code, and while this section is one of exclusion of testimony, and therefore should be strictly construed, we feel bound by the former decision of this court construing this .section.
 

 The view that we have taken of this matter has received judicial consideration in other jurisdictions.
 

 In the case of
 
 Butler
 
 v.
 
 Fayerweather,
 
 91 Fed. 458, 33 C. C. A. 625, the third syllabus is as follows :
 

 “Code Civ. Proc. N. Y. sections 835, 836, provide that an attorney shall not disclose a communication made to him by a client, or the advice thereon, in the course of his professional employment, unless the privilege is ‘expressly waived
 
 *134
 
 upon the trial’ by the client, but that he may testify ‘in the probate of a will * * * as to its preparation and execution,’ if he is one of the subscribing witnesses.
 
 Held,
 
 that an attorney who has prepared a codicil alleged to have been executed and published by the client, and afterwards destroyed by a third person, cannot be required to disclose its contents, and whether it was signed in presence of attesting witnesses so as to constitute a publication, the attorney not having attested the codicil.”
 

 To the same effect is
 
 In re Cunnison’s Will,
 
 201 N. Y. 123, 94 N. E. 648, Ann. Cas. 1912A, 834, wherein it is held that, where the attorney is not a witness to an alleged subsequent will drawn by him, he is incompetent to testify to contents to defeat the probate of a prior will, the subsequent will not being found.
 

 In
 
 In re Eno’s Will,
 
 196 App. Div. 131, 187 N. Y. Supp. 756, it is held:
 

 “It is the settled law, under Code Civ. Proc. sections 835, 836, that, except he is an attesting witness to a will, in no case is an attorney permitted to mate disclosure in respect to the contents of any document or other information communicated to him in the course of his professional employment by his client.”
 

 See, also, 5 "Wigmore on Evidence (2d Ed.), section 2314, where the cases are collated and discussed.
 

 Recognizing, as we do, that in other jurisdictions, and under the common law, the rule might be different, yet in the light of the Ohio statutes and the decisions of this court construing the same, we
 
 *135
 
 are constrained to the conclusion that the testimony of the attorney as to the identity of the copy of the codicil under such circumstances was incompetent. Whether the Legislature may see fit to make some change in the statutes, it is not for us to say.
 

 It is argued that in this case the testimony of the attorney was not prejudicial, for the reason that other witnesses under no disability testified to the existence of this codicil, its preparation, the date and manner of execution, to its removal and destruction at the instance of the testator; that there was sufficient evidence of identification to warrant the introduction of the exhibit in question, so that the jury from all the evidence in the case could say whether such a codicil was executed, as claimed by the plaintiff. But the question we are required to pass upon is simply the right of the attorney who drew the codicil to identify the exhibit as a true copy of the original; the same being a product solely of the communications had with his client and his advice given in that relation.
 

 The construction heretofore given section 11494, General Code, by this court, we feel requires us to deny this right, although the record discloses what would seem to be sufficient testimony to warrant the introduction of the exhibit in question.
 

 This brings us to the third question in the case, and that is whether or not the request before argument, made by the defendants and refused by the court, was erroneous. A copy of this request has heretofore been given, and it is unnecessary to repeat it. One of the paramount issues in this case was the testamentary capacity of Samuel Collins
 
 *136
 
 on May 20, 1919, and a great portion of the testimony contained in this record of nearly 1,400 pages bears upon that point. Was. he of sound mind and memory and not under any restraint upon the day of the execution of this codicil? The defendants claim, he was, and the plaintiff says he was not, lacking in such testamentary capacity.
 

 The request made, we think, had a direct bearing upon that issue and the subjects referred to therein might be proper subjects for the jury to consider and for counsel to argue to the jury in support of their respective contentions. The substance of the charge contained reference to the age of the testator, his mental and physical condition at or before the time of the execution of the codicil in question, his habits and associations, his relations to the parties in interest, his affection toward them, their claim upon his bounty, the character and extent of his property, the disposition that he made of it, both in his will and the codicil, whether such disposition was reasonable and natural, and reference to the previous inten tion of testator as shown from declarations of testator and from any and all the facts and circumstances admitted in evidence. The jury were instructed that if they found by the preponderance of the evidence that the testator did not have sufficient mind and memory to form an intention and purpose to dispose of his property by will or codicil on the 20th day of May, 1919, their verdict should be in favor of the original will.
 

 The testimony in will contests necessarily must taire a wide range, and while the principles underlying the grounds necessary to set aside a will
 
 *137
 
 are few, and not involved, the testimony necessary to be considered to reach a conclusion concerning such grounds may be quite voluminous.
 

 “The rule is that a testator has the right to make a harsh, unjust, unreasonable, or even a cruel will; he may disinherit his only child and leave his property to other heirs or to strangers. Such facts, in themselves, do not constitute legal grounds for holding that the testator was mentally incompetent. Yet, in determining the ultimate question of the testamentary capacity of the testator, the jury has the right to consider any evidence showing that the will was just or unjust, reasonable or unreasonable, natural or unnatural. It may also consider evidence as to the value of the decedent’s estate and the financial condition of those who might naturally expect to be beneficiaries, at the time the will was made. Such matters, although not in themselves establishing testamentary incapacity, may be considered and have weight, according to circumstances and in connection with other evidence, in determining the question of capacity.” 1 Alexander on Wills, Section 355.
 

 The statement in the latter part of the request as to the ability of the testator is apparently taken from
 
 Dunlap, Exr.,
 
 v.
 
 Dunlap,
 
 89 Ohio St. 28, 104 N. E. 1006, and the elements claimed to be involved in the evidentiary facts stated in the request are all recognized in will contests as being proper subjects of consideration by a jury, and not in conflict with
 
 Niemes
 
 v.
 
 Niemes,
 
 97 Ohio St. 145, 319 N. E. 503.
 

 The record further discloses some criticism of the verdict in that it fails to refer to item 2 of the
 
 *138
 
 original will, which was changed by the codicil executed in May, 1919. We do not feel that the verdict as returned should have been disturbed upon that ground, as the matter is not of great consequence, considering the other paramount issues of the case. The verdict was responsive to the issues submitted.
 

 While we are impressed with the fairness and careful manner in which this long and arduous case was tried in the court of common pleas, yet for the reasons stated and conclusions reached we are of the opinion that the judgment of the Court of Appeals should he affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Robinson, Jones, Matthias, and Allen, JJ., concur.
 

 Wanamaker, J., not participating.