**FOX et v LYNCH, Jr**

Ohio Appeals, 5th Dist, Perry Co

Decided March 24, 1932

George C. McKelvey, St. Clairsville, and Hyman Finklestein, Fairpoint, for plaintiffs in error.

Joseph L. Meehan, New Lexington, Mell G. Underwood, New Lexington, and Dwight Cusick, New Lexington, for defendant in error.

SHERICK, PJ.

It is claimed that the trial court erred in certain remarks to the jury immediately after or during the statement of the case, in that he therein limited the issue to the question whether the testator made the will and whether he had sufficient mental capacity, and then said that certain testimony as to whether or not the testator was a drinking man would not be received. It is also charged that the trial court caused the stenographer to elide from the record certain exceptions attempted to be saved by the plaintiffs and also certain remarks of the court made in the presence of the jury.

Any such remarks so made by the court would of course become immaterial if the court properly directed a verdict. However, an examination discloses that the record is silent as to these claimed errors. It seems unnecessary for us to remark that this court can only consider such questions as are presented by the bill of exceptions and the transcript. If the record in this case does not speak the truth as to what transpired at the commencement of the trial, and, the court arbitrarily refused to so make it speak, the injured party had his remedy by way of mandamus. This remedy not having been employed, this court will take the record to be true as we find it, to which we may neither add nor detract.

We will next consider the error claimed in the matter of the court's refusal to permit the plaintiffs to call Congressman Underwood, an attorney, and a subscribing witness to and scrivener of the testator's

will, for the purpose of cross-examination.

The plaintiffs now say that under the authority of **Kettemann v Metzger**, 3 C. C. (N.S.), 224 (13 C.D., 61, 67), the court erred in its refusal. The claim is based upon a sentence appearing in the opinion of the above case, at the top of page 231, which reads as follows: "If the witnesses were living and competent, they should have been brought into court and subjected to cross-examination like other witnesses."

In the case at bar it appears that "the will—together with probate," was offered in evidence and admitted without objection, that the will was read to the jury, and that the defendant then rested. In the Kettemann case, it appears that the court ruled out the affidavit of one of the witnesses to the will as filed in the Probate Court, and that the like affidavit of the other witness to the will was read to the jury in the absence of plaintiff's counsel. In this case the affidavit of Mr. Underwood was not read to the jury.

The question determined in the Kettemann case was that the court did not err in ruling out the affidavit of the one witness which was objected to. As pointed out therein, §5863, Revised Statutes, now §12084, GC, only provides that the affidavit of the testimony of such a witness shall be admitted in evidence only when such witness is out of the jurisdiction of the court, or is dead, or has become incompetent since the will's probate. It is therefore evident, Mr. Underwood being in court, that his affidavit as a subscribing witness' testimony made and offered in evidence in the Probate Court as proof of the execution of testator's will was incompetent. §12085, GC, provides that the sustaining party must offer the "will and probate." The word "probate" means the order of probate, and it does not include the affidavit of subscribing witnesses to the will.

The question now before this court is, Can a subscribing witness to a will be called for cross-examination by the contestants, when they have permitted without objection the introduction of his affidavit as a part of the order of probate? We must answer this question in the negative. One cannot sit idly by and permit incompetent testimony material to the issue presented to be received in evidence, and thereafter claim to be prejudiced thereby; neither is he in position to claim a privilege or right therefrom not theretofore recognized by the law.

Sec 11497, GC, provides who may be called by the adverse party for cross-examina-tion. Mr. Underwood is not in the class therein designated. The maxim of statutory construction, "expressio unius est exclusio alterius," is therefore controlling. Had the trial court admitted this affidavit in evidence over objection, it would have been error. Had it been received with the accorded privilege granted the contestants to call the deponent for cross-examination, it would have been irregular, but not erroneous. It is therefore our view that the Ketteman case is not authority for the rule contended for, and that there was no error in the refusal to permit the contestants to cross-examine Mr. Underwood.

We come now to a more serious question presented by this record. It is claimed that the court excluded testimony offered by the contestants which was competent and material to the issue or issues; and also that the court erroneously confined them to but two matters in issue. These matters may be considered together.

The defendant was called by the plaintiffs for the purpose of cross-examination, and thereupon the following question, among others, was asked of him: "Now, I wish you would state to the jury and tell the jury about your business connections with your father." The question was objected to. The objection was sustained and excepted to, and in the course thereof the court stated: "The question is, did this man make the will or if he had capacity to make the will." It further appears that the question was asked of this witness whether or not there was any money consideration for a deed made by the testator to the defendant in 1913. An objection to this question was sustained; it having previously been shown that the father relied upon the defendant, that he did all his business, and lived alone with him. In fact, all business matters were transacted by the son. The question was then followed by an inquiry whether this property was not transferred back about the first of May, 1922, about seven weeks before the date of the will. Objection to this query was likewise sustained, and an exception taken.

This question was later followed by another, "So that if your father did disinherit or leave the rest of the children $5.00 apiece, you wouldn't say to the jury that it was because he had any trouble with the rest of the children?" This question was objected to and was likewise sustained, and an exception taken.

Two questions then followed to the point whether he had not seen the testator in 1922 making speeches presumably to some

imaginary audience. In both instances the court made the same ruling. The witness was thereafter asked of what his father's estate consisted at the time the will was made. An objection to this was sustained, and exception taken. Then followed the question: "I will ask you whether or not you saw what I have asked you, that is, your father out on the front porch talking incoherently, at any time?" An objection thereto was sustained, and the court remarked: "He might have been on a plain drunk and had tremens and everything else; it makes no difference about him making a will, about his capacity." This question followed: "I will ask you whether or not you had any trouble with your father along about 1922." An objection thereto was likewise sustained, and the court remarked: "No family that ever lived but what had them. We are here on his father's capacity to make a will."

There further appear in the record the following question, colloquy, and ruling: "Now, just before your father died or before he took sick you and your father had that drawer out (a drawer in a safe used by both), did you not?" Objection by defendant. By the court: "The will was made in 1922. The question is what was his mental capacity at the time he made the will." By Mr. McKelvey for plaintiff: "We also have the question in the case of undue influence." By the court: "The question is what was his capacity when he made the will."

Further along questions were asked tending to establish the attitude of the testator towards his other children. The court, in sustaining an objection to this line of testimony, stated: "We are not trying the family relationship here. The fact is if you don't get something I am going to stop you." At this point the cross-examination of the defendant terminated.

The plaintiff then called one P. C. Clark, a neighbor of the testator for many years. He was asked, "I wish you would please state to the jury what, if anything, you observed about Thomas Lynch, Sr., when you would see him across the street," and "When you would see Mr. Lynch across the street at his home where would you generally see him?" Objections to both questions were sustained and exceptions noted. Other pages of the record show many questions as to what the witness saw the testator doing in 1922, and whether the witness had not had a conversation with the testator before he died pertaining to his will. To all of these questions objections

were sustained and exceptions taken. The plaintiffs further sought answer to the following question: "State to the jury what you saw him doing, if anything, in 1922?" To this objection was made and sustained. Plaintiff's except and expect the answer to be that he "saw Mr. Lynch on the porch talking." The court: "What is competent here is what he did before and after he made the will." By plaintiffs: "Talking in a loud voice incoherently and that he—" The court: "There is nothing here to which you can make a statement at all." By Mr. McKelvey for plaintiffs: "Objection to the statement of the court." It therefrom appears that counsel for plaintiffs attempted to have the record show what they expected to prove by these questions.

The record then shows that the plaintiffs rested, and in argument and brief they now say that a further attempt to prove their case was futile, and hence they rested.

We are of opinion that the proffered testimony herein commented upon was competent and should have been received in evidence, that its exclusion was prejudicial error of which the plaintiffs may rightfully complain, and that the court was wrong in assuming that the only issues presented were, Did the testator have the mental capacity to make a will? and, Did he make a will? The Supreme Court in the leading case of **Niemes v Niemes, 97 Oh St, 145, 150, 119 NE, 503, 504,** says "that there is but one issue, that is, the general issue to be made up on the journal and submitted to the jury as to whether the paper writing is the valid last will and testament of the testator." But the "court also holds that within the general issue so made upon the journal there may be included and generally are included a number of issues special in their nature. An instrument probated as a will may be set aside for a variety of reasons, and, without pretending to give all such reasons, we would refer to four." Of these four we here cite two, lack of mental capacity and undue influence. The Supreme Court further said: "All of these several questions might be introduced in one given will contest * * * and, while all are embraced within the general issue of the validity or invalidity of the instrument, yet they are clearly separate issues of fact or law." The fact that the petition does not state upon what grounds the plaintiffs challenge the will can make no difference. The statutes define and make the general issue. If such grounds were pleaded, the same would be mere surplusage and might

be subject to a motion to strike out.

Dew v Reid, 52 Oh St, 519, 40 NE, 718, is an earlier expression of the court on the same question. Therein it was held: "Upon the trial of that issue (whether the writing produced is the last will of the testator or not,) any competent evidence tending to prove that, for any reason, the instrument in contest is not the valid will of the testator, is admissible, and should receive proper consideration by the jury, although the specific ground of contest to which the evidence relates is not alleged in the petition." See, also, 1 Page on Wills (2d Ed), 565.

The court in the case of Collins v Collins, 110 Oh St, 105, 137, 143 NE, 561, 569, 38 A.L.R., 230, quotes the language of Alexander on Wills, volume 1, §355, with approval. It has application here. The author says: "Yet, in determining the ultimate question of the testamentary capacity of the testator, the jury has the right to consider any evidence showing that the will was just or unjust, reasonable or unreasonable, natural or unnatural. It may also consider evidence as to the value of the decedent's estate. * * * Such matters, although not in themselves establishing testamentary incapacity, may be considered and have weight, according to circumstances and in connection with other evidence, in determining the question of capacity."

The following pertinent comment is to be found in Board of Education of Pickaway Tp. Rural School Dist. v Phillips, 103 Oh St, 622, 626, 134 NE, 646, 648: "It has been well said that in the nature of the case issues relating to undue influence are generally determined upon circumstantial evidence and inferences drawn from a full presentation of facts which may be inconclusive when taken separately, and a wide range of inquiry is, therefore, permitted to bring before the jury facts and influences bearing on the preparation of the will."

Finally, referring to the rejected testimony of the lay witness, Clark, as to the testator's actions and conduct, and his observation thereof, we would again refer to the Niemes case, supra. The second syllabus well states the law. It is there said that "It is the established law of Ohio that in such an action a lay witness, although not a subscribing witness, who has theretofore given testimony upon which an opinion can reasonably be based, may give his opinion as to the soundness or unsoundness of the mind of the testator." This witness should have been permitted to testify as to what he observed about the testator at the time the will was made. It bore directly upon his mental condition, and was an issue which the court did recognize. The jury was entitled to hear these facts, upon which the witness might have based an opinion as to the testator's soundness of mind, and from which the jury might have found a want of capacity to make the will.

We therefore conclude that proper and competent testimony was excluded, that the issues were improperly limited, and that the motion for a new trial should have been sustained. The judgment is reversed, and the cause remanded for a new trial.

LEMERT and MONTGOMERY, JJ, concur.