## Hecht's Adm'r et al. v. Hecht et al.

(Decided March 1, 1938.)

L. D. GREENE and J. J. SAVAGE for appellants.

C. E. SCHINDLER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Henry Hecht, a resident of Jefferson county, died testate on June 15, 1932, survived by his widow, Alice Hecht, who was his third wife, and six children, Georgia Emma Hecht, Walter W. Hecht, Alfred Hecht, Pearl

Limes, Hobart Hecht, and Buford Hecht. A few months before his death he had transferred to his son Buford Hecht about $6,000 worth of stock in certain building associations in Louisville.

Buford Hecht was appointed and qualified as his father's executor, and brought suit to settle the estate. Claiming that the building association stock was transferred to Buford Hecht as trustee for all the children, Georgia Emma Hecht, Walter W. Hecht, Alfred Hecht, and Pearl Limes brought suit against Buford Hecht to establish the trust and distribute the funds. Herbert Hecht was made a party defendant. The two actions were consolidated and referred to the master commissioner, who heard evidence and filed a report sustaining the trust. Buford Hecht's exceptions were overruled, the report was confirmed, and judgment rendered in conformity with the report. The case is before us for review.

The applicable principles of law may be briefly stated as follows: A trust may be created by parol. Schauberger v. Tafel, 202 Ky. 9, 258 S. W. 953; Roche v. George's Ex'r, 93 Ky. 609, 20 S. W. 1039, 14 Ky. Law Rep. 584. All that is necessary is that the language used shall clearly and explicitly manifest the owner's purpose to transfer the right, and point out with certainty both the subject of the trust and the persons who are to take the beneficial interest. Barkley v. Lane's Ex'r, 6 Bush 587. To establish a parol trust against the holder of the legal title, the evidence must be clear, convincing, and satisfactory, and if it is susceptible of reasonable explanation on a theory other than the alleged trust, no trust will be declared. Potter v. Potter, 180 Ky. 370, 202 S. W. 872. Evidence of statements alleged to have been made by the grantor when the grantee was not present, and the grantee's alleged admissions, which he denied, is always received with great caution, and is not generally regarded as sufficient to establish a trust where it does not square with the conduct of the parties and evidence to the contrary is equiponderant. Potter v. Potter, supra.

Taking up the evidence, we have on the one hand the following: On November 8, 1930, and less than two years before his death, Henry Hecht executed a will by which he gave $1,000 to each of his six children, and his house and lot in Camp Taylor to his wife, Alice Hecht,

for life, with remainder to the six children. The residue of his estate was devised to Buford Hecht, as trustee, the income to be paid to Alice Hecht during her life, and on her death the property to be divided equally among all the children by his executor and trustee, Buford Hecht. In the spring of 1932 he had prepared another will which was duly probated. By this will he provided for the payment of his debts and funeral expenses, and devised his home and its contents in Camp Taylor and $1,000 to his wife, Alice Hecht. He gave his tools to his son Buford Hecht, and devised all the rest and residue of his estate to his six children to share and share alike. Both wills were written by L. Edmund Huber. According to Mr. Huber, during the time leading up to the execution of the second will, Buford Hecht came to his office with his father, and his father stated in the presence of Buford that he had placed a certain portion of the building association stock in Buford's name so as not to come within the terms of the will, that Buford was to hold the stock until the time for the settlement of his father's estate and distribute it on an equal basis among the children. He told Walter Hecht in the presence of Buford Hecht that, if Buford did not carry out his father's instructions in regard to the $6,000 worth of building association stock, he would be forced to go into court and testify regarding the matter. Thereafter he was discharged as attorney for the estate. Walter Hecht deposed that upon opening his father's box all the building association stock was not there. That afternoon he got hold of Buford and asked where the stock was and Buford said, "That has all been arranged for, I can't tell you where it is, but you can rest assured that this has all been arranged for and you have nothing to worry about." The next morning they went to Mr. Huber's office together. Buford produced an envelope from his pocket and said, "Here is the $6,000.00. I could not tell you where the money was. Mr. Huber will tell you if he chooses to do so." That evening Buford produced the stock again and told them that he, Mr. Huber, and his father had arranged the plan to see that they got the stock. During the same month he talked to Buford several times. It was agreed among all of them that, since Buford had to cash some of the stock for funeral expenses, and provide the widow with $1,000, he should ask the building and loan companies to cash the stock and then pay each of the

children in cash. Alfred Hecht, Georgia Emma Hecht, and Pearl Limes corroborated Walter Hecht as to a certain meeting at Georgia Emma Hecht's house, where the distribution of the building association stock was discussed.

On the other hand, we have the fact that the building association stock was transferred to Buford Hecht, individually, the testimony of several witnesses that the other children rarely ever visited Henry Hecht, and that there was an estrangement between him and them, that Buford Hecht was the favorite son, and that Henry Hecht was buried from his home. In addition to this, Buford Hecht testified that his father gave him the stock individually, and denied all conversations to the effect that he was holding the building association stock for all the children, as well as being present in Mr. Huber's office when his father made the statement attributed to him by Mr. Huber.

Appellant insists that the evidence in the case before us does not come up to the required standard. Clearly, the case is one where we have something more than mere admissions of the grantee or donee, or mere statements of the donor when the donee was not present. Nor is it a case where such statements or admissions do not square with the conduct of the parties. Notwithstanding the alleged estrangement between Henry Hecht and some of his children, he provided in his will of 1930 for the equal distribution of his property among all his children. Not only so, but it is apparent from the testimony of Mr. Huber that, by the subsequent transfer of the building and loan stock to Buford Hecht, and execution of his last will, he intended to bring about the same result. In addition to this, we have not only the admissions of Buford Hecht concerning the distribution of the building and loan stock that had been transferred to him, but actual conduct on his part tending to show a recognition of the trust. Indeed, when the case is carefully considered in the light of the fact that it is always difficult to prove a parol trust, it is not perceived how the evidence could have been more convincing and satisfactory.

But the point is made that Mr. Huber was not only the attorney of appellant but also of Henry Hecht, and was not competent to testify concerning any communication made to him by either. With respect to appel-

lant, it is sufficient to say that Mr. Huber was not appellant's personal attorney, but was the attorney for the estate, and any communications made to him by appellant were not privileged. Taking up the communications made by Henry Hecht, we have the following situation: If the communication made at the time of the preparation of the will concerned only a past transaction and not the will itself, the subject-matter of the employment, it was not privileged. Denunzio's Receiver v. Scholtz, 117 Ky. 182, 77 S. W. 715, 25 Ky. Law Rep. 1294, 4 Ann. Cas. 529. On the other hand, if it be regarded as a communication concerning the preparation of the will, it is not privileged, for it is the rule that the death of a client removes the pledge of secrecy previously imposed upon communications between attorney and client for the free administration of justice, because after the client's death, where all the parties are claiming under him, there are no reasons ordinarily why proof of such communications should not be admitted in evidence. Allen v. Ross, 199 Wis. 162, 225 N. W. 831, 64 A. L. R. 180, and note. Bonta v. Sevier, 202 Ky. 334, 259 S. W. 703. In addition to all this, the communication was made to Mr. Huber in the presence of appellant, to whom the building and loan stock had been given, and under circumstances indicating that he intended that the communication should be made public if necessary. Denunzio's Receiver v. Scholtz, supra. 70 C. J. 583. It follows that Mr. Huber was a competent witness.

Judgment affirmed.