James STEGMAN, Executor of the Will of Catherine Eckel, Deceased, Appellant,

v.

Charles J. MILLER, Appellee.

Charles J. MILLER, Cross-Appellant,

v.

James STEGMAN, Executor of the Will of Catherine Eckel, Deceased, Cross-Appellee.

Court of Appeals of Kentucky.

Oct. 25, 1974.

PALMORE, Justice.

Catherine Eckel, a childless widow, died testate in September of 1969. Her will had been executed on April 9, 1968. She left a part of her estate to certain charities and the rest to her surviving brothers and sisters, including the mother of Charles Miller, the appellee in this proceeding. The appellant, executor of Mrs. Eckel's will, appeals from a judgment entered pursuant to a verdict awarding Miller $8,000 on an implied contract by which Mrs. Eckel is alleged to have been obligated to make a provision in her will for payment of the reasonable value of personal services rendered to her by Miller during her lifetime.

 A principal ground for the appeal is that the evidence was not sufficient under the principles of Stewart v. Brandenburg, Ky., 383 S.W.2d 122 (1964), and other comparable decisions to support a recovery. Without a detailed exposition of the evidence, suffice it to say that what might *not* be "extraordinary" services by a close relative under some circumstances may very well be extraordinary under other circumstances, including, as in this case, the distance necessarily traveled in order to perform the services. We cannot say as a matter of law that Miller's services were not extraordinary.

We have much reluctance to reverse the judgment of the trial court, or even to consume the necessary time to write at length upon it, except that it involves an important principle of law on which some of our earlier opinions may conduce to invite misunderstanding with respect to the attorney-client privilege, KRS 421.210(4).

The applicable portion of this statute reads as follows: "No attorney shall testify concerning a communication made to him, in his professional character, by his client, or his advice thereon, without the client's consent . . ."

Though long-since codified by direct legislation, the attorney-client privilege was

Frank V. Benton III, Benton, Benton, Luedeke & Rhoads, Newport, for appellant and cross-appellee.

William O. Bertelsman, Bertelsman & Bertelsman, Newport, for appellee and cross-appellant.

"unquestioned" in the latter days of Elizabeth I and is the oldest privilege for confidential communications vouchsafed to us by the common law. 8 Wigmore, Evidence § 2290 (McNaughton rev. 1961). Resting then on other policies, it survives today for the promotion of free and honest consultation between attorney and client. *Id.* § 2291; Model Code of Evidence, Rule 210, Comment *a* (1942). There is much to be said, and has been said, against it, but as the substantive law of evidence is generally understood to be subject to legislative prerogative we are not disposed either to prostitute or to improve upon it to suit our own inclinations.

Over objection by the executor the witness Louis Arnold, an attorney, was permitted to testify that he represented Mrs. Eckel in his professional capacity for a number of years ending some six months before her death. He said that on several occasions he visited at her home, "all through the early 1960's and more particularly in 1961 and in 1964 she talked about the will and I did keep after Mrs. Eckel because I felt she should have a will and she indicated she wanted one. I did keep after her and in fact I even wrote and advised her it was important." During these discussions of a proposed will, according to Arnold, "She said she wanted to leave some money to her nephew Charlie Miller and she explained why—I can't tell you her exact words but she said she was obligated to him or owed him for the looking after the property, taking care of the building and that he had done all her driving around and taking her places, wherever she had to go. I can't tell you the exact words but she said she was obligated or owed him and wanted to put that in the will."

As so often appears to be the case, however, Mrs. Eckel never did get around to drawing that will, and in 1968 she had another attorney prepare a will in which she did not carry out the intention theretofore communicated to Arnold.

Obviously Arnold's testimony was of great importance to Miller's case, hence its admissibility presents a vital question on this appeal. It centers on a traditional exception to the attorney-client privilege that applies to the execution and contents of a will.

As stated in Wigmore, *supra,* § 2314, after a testator's death the attorney who drew the will "is at liberty to disclose all that affects the execution and tenor of the will," for the reason that "it seems hardly open to dispute that they are the very facts which the testator expected and intended to be disclosed after his death." The attorney may also testify concerning the testator's mental capacity, but only because his knowledge derives from personal observation rather than confidential communication. *Ibid.*; Bonta v. Sevier, 202 Ky. 334, 259 S.W. 703 (1924).

The exception is limited to actions between or among persons claiming under the testator. Annotation, Privilege as to communications, etc., 64 A.L.R. 184, 185 (1929). Conversely, it does not apply to an action between those claiming under the testator and third parties, or "strangers," claiming adversely. *Id.* at p. 191; Supplement, 66 A.L.R.2d 1302, 1307 (1959). For an excellent statement of the rule see Paley v. Superior Court, 137 Cal.App.2d 450, 290 P.2d 617, 621 (1956).

By this time, no doubt, the reader of this opinion may be asking himself what is the relevance of this discussion to the would-be drafter of a will that was never drafted, and the answer is that we are attempting to show that even if Arnold *had* drafted Mrs. Eckel's will the attorney-client privilege would bar his testimony in an action adverse to those claiming under it. *A fortiori,* the exception could not apply to a witness who never drew a will at all.

We need not determine whether Hood v. Nichol, 236 Ky. 779, 34 S.W.2d 429 (1930), was correct in holding admissi-

ble the testimony of an attorney concerning discussions incident to the preparation of a will that was later revoked. The opinion did not address the point that the paper in question never took effect as a will.[1] In any event, the action was between parties all of whom claimed *under* and not against the deceased client's estate, a condition which is not met in this case.

In Hecht's Adm'r v. Hecht, 272 Ky. 400, 114 S.W.2d 499 (1938), although the litigation concerned the effect of an *inter vivos* transfer of stock, the conversation in which the client explained its purpose and terms related directly to the preparation of a new will which was later admitted to probate. Again, all of the parties to that controversy also were claiming under the deceased client and the exception was held applicable, "for it is the rule that the death of a client removes the pledge of secrecy previously imposed upon communications between attorney and client for the free administration of justice, because after the client's death, *where all the parties are claiming under him,* there are no reasons ordinarily why proof of such communications should not be admitted in evidence." (Emphasis added.) *Id.* at 114 S.W.2d 501.

More nearly applicable to the facts of this case is Doyle v. Reeves, 112 Conn. 521, 152 A. 882 (1931), an action to recover for personal services in which it was held error for the trial court to allow an attorney to introduce and testify concerning a proposed will he had drafted at the client's instructions but which had never been executed:

"Unless otherwise provided by statute, communications, by a client to the attorney who drafted his will, in respect to that document and transactions between them leading up to its execution, are not privileged, after the client's death, in a suit between devisees under the will and heirs at law, or other parties who all

claim under him. The principal reason is that the general rule is designed for the protection of the client, and it is deemed not for the interest of the testator, in a controversy between the parties, all of whom claim under him, to have those declarations and transactions excluded which promote a proper fulfillment of his will. Also a witness to a will, although attorney for the testator, is permitted to disclose everything which he knew concerning his attestation and the circumstances surrounding and leading up to it. . . . The conditions underlying and essential to these relaxations of the general rule are not met by the situation before us. We are not dealing with a completed and executed will, but with a mere draft never executed by the decedent or even, so far as appears, read to and approved by him. Also the action is one between the testator's representative and a stranger, in legal contemplation, not claiming under him . . . . We conclude, therefore, that both the consultations between Cole and Reeves preliminary to the preparation of the new draft, Exhibit E, and the instrument itself were within the protection of the privileged communication rule, when invoked in behalf of the decedent's executor and representative." *Id.* at 152 A. 883–884.

We reach the same conclusion here.

Appellee has perfected a provisional cross-appeal in which he contends that Miller and his wife should have been and in the event of a new trial should be permitted to give additional testimony free of the proscription contained in KRS 421.-210(2) after the admission of testimony which, it is claimed, opens the qualification contained in KRS 421.210(2)(c) to the effect that the exclusion does not apply if the "decedent, or a representative of, or someone interested in, his estate, shall have

---

1. It seems elementary, however, that communications not relating to the paper which eventually is admitted to probate cannot possibly pertain to its "execution and tenor," as the rule is expressed by Wigmore.

testified against such person, *with reference thereto*" (emphasis added).

The evidence cited as having this result consisted of testimony by the executor (also a nephew of Mrs. Eckel) to the general effect that he too had rendered services to the decedent, for which he was never compensated, and that she had frequently mentioned rewarding or "taking care of" him and of others, and testimony of two of the testatrix's sisters along the same lines. None of this evidence made reference to any conversations between Miller and the testatrix except for an acknowledgement by one of the sisters, elicited by counsel for Miller on cross-examination, that Mrs. Eckel "probably" had made similar remarks to Miller.

We have not been favored with any documentation one way or the other on this point, and for that reason might be justified in dismissing the subject out-of-hand. Having gone this far, however, we are loath to leave the job so abruptly.

According to the preserving avowal, Miller would say that he had a shop in Mrs. Eckel's garage which was inadequate for the conduct of his business; that he built a new shop elsewhere and was about to move to it but desisted at her specific request in order to assist her, in return for which she promised that for his time, trouble and expense she would see that he was taken care of if anything happened to her; that he thereupon consumed several hours per week for six years in the performance of various services for her; that he drove his automobile back and forth every day for that purpose; etc.

■ Most of this would have been cumulative evidence except for the conversations between Miller and Mrs. Eckel, these being the crucial matter excluded by the statute. None of the witnesses for the estate denied the existence of those conversations or testified directly with respect to them, nor did they deny that Miller had performed the claimed services. "The rule is that when one interested in an estate testifies for it, the adverse party then becomes a competent witness, not for all purposes and on all subjects, but solely on those subjects and about those things concerning which the one interested in the estate has testified." Arrington v. Sizemore, 241 Ky. 171, 43 S.W.2d 699, 703 (1931).

■ We concede that the executor's testimony that he had performed personal services for Mrs. Eckel without compensation appears to insinuate that Miller had no basis for expecting payment either, but that is an extremely tenuous relationship to the specific conversations and transactions about which Miller desired to testify and is not enough, in our opinion, to waive the rule of exclusion.

The judgment is reversed on the appeal and affirmed on the cross-appeal with directions for a new trial.

All concur.