SARAH DOYLE *vs.* FRANCIS T. REEVES, EXECUTOR, (ESTATE OF EDWARD F. COLE).

Third Judicial District, Bridgeport, October Term, 1930.
MALTBIE, HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 31st, 1930—decided January 13th, 1931.

*John F. McDonough* and *William W. Gager,* for the appellant (defendant).

*Terrence F. Carmody,* for the appellee (plaintiff).

HINMAN, J. The plaintiff, commencing in 1903, was employed as second girl by a Mrs. Dudley at the home of Edward F. Cole, in Waterbury, continuing until 1910, when Mrs. Dudley died. Thereafter the plaintiff worked for Cole as housekeeper, doing all of the housework, also acting at times as nurse when Cole was ill, until his decease, August 23d, 1929. From 1910 until 1915 she received from Cole $20 per month, from 1915 to 1919, $25 per month, 1919 to 1928, $40 per month, and from 1928, $75 per month. In this action she alleged, in an amended complaint, and offered evidence to prove, that Cole promised and agreed with her that if she would take care of him and his home until his decease, he would give her by will sufficient money to provide for her during her life; that relying thereon she remained in his employ and cared for him and his home until his death, but he bequeathed to her $4000 only, and she claimed recovery for the reasonable worth of the services so rendered. She was awarded $12,000. The defendant moved to set aside the verdict, and appeals from the denial of this motion, and from certain rulings on evidence and portions of the charge.

The assignments of error pertaining to rulings on evidence are decisive of the appeal. Francis T. Reeves, called as a witness by the plaintiff, testified that he was an attorney at law, and in that capacity called on the decedent, at his house, in October, 1927; at this conference he and the decedent discussed the will which the latter had made and executed some time before, and Cole asked him to prepare another will. He was then asked: "Did he tell you what he wanted to have put in that will?" To this the defendant's attorney objected on the ground that the answer would

disclose a privileged communication; the court overruled the objection and the witness answered "Yes." Then, the witness having testified that two or three days thereafter he had prepared a draft of a will, he was asked if the paper which he drew up was different from the original will, so far as concerned Sarah Doyle. Objection was overruled and the witness replied "Yes, it contained a provision the other will didn't have." The plaintiff's attorney then offered in evidence the draft of a new will which, over objection, was admitted and marked Exhibit E, the trial court stating that it was admitted only so far as it related to Miss Doyle— the three paragraphs in which she was mentioned. Of these, one contained a bequest to Miss Doyle of $4000, a like provision being contained in the original will; another devised to her and a Miss Babin, equally, decedent's home real estate at 69 Linden Street, in Waterbury, and the third made a similar disposition of the contents of the house. The proposed new will was never executed, and the will previously drawn and executed by Cole remained in effect and was admitted to probate after his decease.

The common-law rule of privileged communications has been stated as follows: "Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relevant to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived." 5 Wigmore on Evidence (2d Ed.) § 2292. We have not, as have some States, any statute altering this rule. As to the underlying reason for affording such protection we have said: "It is obvious that professional assistance would be of little or no avail to the client, unless his legal adviser were put in possession of all the facts relating to the subject-matter of

inquiry or litigation, which, in the indulgence of the fullest confidence, the client could communicate. And it is equally obvious that there would be an end to all confidence between the client and attorney, if the latter was at liberty or compellable to disclose the facts of which he had thus obtained possession; and hence it has become a settled rule of evidence, that the confidential attorney, solicitor or counselor can never be called as a witness to disclose papers committed or communications made to him in that capacity, unless the client himself consents to such disclosure." *Goddard* v. *Gardner*, 28 Conn. 172, 175.

Generally, therefore, an attorney is not permitted, and cannot be compelled, to testify as to communications made to him in his professional character by his client, unless the client consents. 28 R. C. L. 548. In the present instance, although the decedent was an attorney, the relation of attorney and client clearly obtained and the rule applies, unless there comes into operation some recognized exception or limitation justifying admission of the communications in question. Instructions given by a client to an attorney in relation to papers about to be drafted by the latter which include a statement of the purpose to be accomplished, are privileged. "It is often as necessary to secure professional advice from an attorney in regard to drafting papers, as in respect to the conduct of proceedings in court." *Brown* v. *Butler*, 71 Conn. 576, 583, 42 Atl. 654. This consideration is particularly applicable to wills, as compared with mere instructions for drafting of an instrument, such as a deed, involving no legal problem. *Todd* v. *Munson*, 53 Conn. 579, 588, 4 Atl. 99; 5 Wigmore on Evidence (2d Ed.) § 2297.

We see no legitimate material distinction between such oral communications as passed between the de-

cedent and Reeves and the written draft of a will, Exhibit E. If the attorney could not testify as to any information or expressions of intent or purpose proceeding to him from the decedent, or any advice given by him in the premises, it would seem to follow that he would likewise be incapacitated from testifying to the direct results thereof. *Collins* v. *Collins,* 110 Ohio St. 105, 143 N. E. 561, 38 A. L. R. 230, 242. The contents of the draft of the will, here, as of the codicil in the case just cited, are of necessity the result of information given and desires expressed by the client and advice afforded and professional skill exercised by the attorney, and so, in another form, were communications between client and counsel. *Butler* v. *Fayerweather,* 33 C. C. A. 625, 63 U. S. App. 120, 91 Fed. 458; *In re Eno,* 196 N. Y. App. Div. 131, 187 N. Y. Supp. 756, 763, 764.

Unless otherwise provided by statute, communications, by a client to the attorney who drafted his will, in respect to that document and transactions between them leading up to its execution are not privileged, after the client's death, in a suit between devisees under the will and heirs at law, or other parties who all claim under him. The principal reason is that the general rule is designed for the protection of the client, and it is deemed not for the interest of the testator, in a controversy between the parties all of whom claim under him, to have those declarations and transactions excluded which promote a proper fulfillment of his will. Also a witness to a will, although attorney for the testator, is permitted to disclose everything which he knew concerning his attestation and the circumstances surrounding and leading up to it. *Middletown Trust Co.* v. *Crowell,* 89 Conn. 290, 292, 93 Atl. 785; 28 R. C. L. p. 550; 5 Wigmore on Evidence (2d Ed.) §§ 2314, 2315; 17 L. R. A. (N. S.) 108, note.

The conditions underlying and essential to these relaxations of the general rule are not met by the situation before us. We are not dealing with a completed and executed will but with a mere draft never executed by the decedent or even, so far as appears, read to and approved by him. Also the action is one between the testator's representative and a stranger, in legal contemplation, not claiming under him. 17 L. R. A. (N. S.) p. 111, note.

The appellee maintains, however, that Exhibit E was admissible under § 5608 of the General Statutes as a memorandum of the deceased. The paper was not written or signed by the decedent; as we have just noted, it does not appear that it was ever read or otherwise communicated to him and approved or assented to by him. Therefore there is a material and vital difference between this paper and the writing, made and signed by the deceased, although abortive as a will because of lack of witnesses, held admissible under this statute in *Brown* v. *Goodwin*, 110 Conn. 217, 220, 147 Atl. 673. Also, we think, the operation of the doctrine of privileged communication extends to and affects the applicability of § 5608 under the circumstances of the present case. The purpose of the statute was to remove the disparity in advantage previously possessed by living litigants as against the representatives of persons whose voices were stilled by death, by permitting the declarations and memoranda of the latter to be received and weighed in the evidential balance as against the assertions of the living. *Mulcahy* v. *Mulcahy*, 84 Conn. 659, 662, 81 Atl. 242; *Rowland* v. *Philadelphia, W. & B. R. Co.*, 63 Conn. 415, 417, 28 Atl. 102; *Bissell* v. *Beckwith*, 32 Conn. 509, 516. While the statute is entitled to, and has been accorded, a liberal construction having in view its purpose and the mischief it was designed to remedy, it

does not follow that the privilege conferred by it is entirely without exceptions or limitations in operation. We have recognized one such in the *Rowland* case, just cited (p. 418), holding that a deposition given by the decedent while living could not be supplemented by evidence, offered by his representatives, after his death, of his unsworn statements in his own favor as to the same matter. It is equally logical and reasonable that the law, primarily designed for the benefit of the decedent, through his representatives, should not be so construed or applied as to entirely deprive such representatives of that protection which would have been available to the decedent, while living, as to confidential communications between his attorney and himself. The exceptions relating to communications and transactions with respect to completed wills, which we have already noticed, appear to go as far as is consistent with the reason, purpose and appropriate operation of the rule of privileged·communications and of the statute (§ 5608) regarding reception in evidence of memoranda and declarations of deceased persons.

We conclude, therefore, that both the consultations between Cole and Reeves preliminary to the preparation of the new draft, Exhibit E, and the instrument itself were within the protection of the privileged communication rule, when invoked in behalf of the decedent's executor and representative. Possibly the first two rulings appealed from, although technically erroneous, might be regarded as not, of themselves, requiring a new trial, but this does not obtain regarding the admission of Exhibit E. The purpose of its introduction, as stated to the jury, and its probable effect were to tend to confirm the plaintiff's claims by showing an apparent attempt on the part of the decedent to carry out promises of compensation which,

she asserted, he had made to her. With that paper in evidence, the previous testimony that the decedent had directed the attorney as to desired provisions therein emphasized the inference that the draft reflected and conformed to those instructions, and the further testimony as to the provisions for Miss Doyle naturally would invite and initiate comparison, in that regard, between the draft and the former will. The cumulative result of these rulings could not have been other than prejudicial to the defendant. The admissibility of the further evidence, rulings upon which are also made ground of appeal, depended upon the presence of evidence of the provisions made for Miss Doyle in Exhibit E, and fails if that exhibit is excluded.

None of the requested corrections of the finding of facts as to which the parties offered evidence and claimed to have proven are essential to a fair presentation and a determination of such claimed errors in the charge as we have occasion to consider, and this is the only purpose and function of the finding in a jury case. *Brown* v. *Goodwin,* 110 Conn. 217, 218, 147 Atl. 673.

The charge adequately directed attention to the caution and careful scrutiny required as to evidence in support of claims against the estate of a decedent, and sufficiently covered the request of the appellant pertaining to that subject. *Howd* v. *MacGregor,* 102 Conn. 331, 334, 128 Atl. 518. The subsequent instruction that the requirement of proof by a preponderance of evidence was the same in this case as in any other civil case could not have counteracted or affected, as the appellant contends, the force of that caution, which the court was careful to point out is applicable to every case of this character.

Error is assigned that the court appeared to char-

acterize the sums received by the plaintiff monthly as "nominal"; as to this it would have been preferable to limit the reference to the amount of these payments, without any comment which might be construed as relating to their size or adequacy. Otherwise, the statements of the plaintiff's claims furnish no ground for effective complaint. Considered, as it properly must be, with the instructions which preceded and followed it as to the requisites for recovery, the charge regarding the determination of the amount of damages was not open to valid criticism.

Upon the finding, and the evidence on this point which we have examined under the motion to correct, the time when, if at all, the contract on which the plaintiff relied had its inception was a subject for determination by the jury, and did not, necessarily, commence either with the beginning of her employment directly by the decedent, in 1910, as the appellant, not without reason, construes the charge as intimating, or in 1915, as the appellant claims should have been charged. The form of the claim filed with the executor was not such as to preclude reliance upon *quantum meruit* under the amended complaint. *Hoskins* v. *Saunders,* 80 Conn. 19, 66 Atl. 785. Occasion for the instructions growing out of the filing of the amended complaint during the trial will not arise upon a retrial, nor would any useful end be served by discussion of assignments pertaining to portions of the charge having reference to provisions of Exhibit E, which we have held inadmissible.

Also, as a new trial must be ordered on other grounds, we make no determination of the claim that the verdict should have been set aside as excessive in amount.

There is error and a new trial is ordered.

In this opinion the other judges concurred.