John J. SPRINGLI (Plaintiff), Appellant,

v.

MERCANTILE TRUST COMPANY, a Corporation, Executor of the Estate of Bernard P. Bogy, Deceased (Defendant), Respondent.

No. 30476.

St. Louis Court of Appeals.

Missouri.

March 15, 1960.

Michael B. Gershenson, Walter H. Pollmann, St. Louis, for appellant.

Thompson, Mitchell, Thompson & Douglas, James M. Douglas, Richard L. Eckhart, St. Louis, for respondent.

ANDERSON, Acting Presiding Judge.

In this suit plaintiff, John J. Springli, sought recovery of the sum of $8,000 for services rendered defendant's testator, Bernard J. Bogy. The cause was tried to the court and resulted in a finding and judgment for plaintiff in the sum of $2,640. Plaintiff filed a motion for new trial, alleging that the judgment was inadequate. This motion was overruled. Plaintiff has appealed.

The suit was in two counts. In Count I, plaintiff prayed for damages in the sum of $8,000 for decedent's alleged breach of an oral contract whereby he agreed to bequeath to plaintiff the sum of $8,000 in

return for certain services to be performed by plaintiff, the terms of which contract were fully performed by plaintiff. Count II was in quantum meruit for the reasonable value of said services.

Bernard P. Bogy died testate on May 4, 1957, at the age of 90 years. His wife had died some years previously. His only heir was a grandchild, the daughter of a deceased son. Under the terms of the will, the entire estate, after relatively small devises and bequests, was given to relatives. No bequest was made in favor of plaintiff.

The services for which plaintiff sought compensation were alleged to have been rendered from the latter part of 1950 through 1956. Plaintiff was employed by the government as a mailman. From 1950 to 1954 he worked out of the Eastonia Station, which was located at Easton and Bayard Avenues in the City of St. Louis. His working hours were from 6:00 a. m. until 2:00 or 2:30 p. m. Deceased lived at 1310 Bayard Avenue, one block from the Eastonia Station. In 1954 plaintiff was transferred to the Field Station on Olive Street.

Plaintiff's first witness was Robert J. Gray. Gray was a letter carrier. He worked out of the Eastonia Station from the latter part of 1950 through the early part of 1956. He testified that he would pass Mr. Bogy's house twice a day going to and from work. At times plaintiff would walk with him and stop off at Mr. Bogy's house. The witness further testified that he quite often saw plaintiff go into Mr. Bogy's house at other times— early in the morning, at noon, and later in the evening. He stated that two or three times a week he would see plaintiff carry bags, newspapers, cigars and packs of beer into Mr. Bogy's house. This occurred around 4:00 o'clock in the afternoon.

Daniel Tate operated a restaurant at various places in the neighborhood of Mr. Bogy's house from 1951 through 1956. Almost every day during that time Mr. Bogy would call his restaurant to ascertain what they had on the menu for lunch and, after being informed thereof, would say, "All right, I will send up and get it." Thereafter, plaintiff would pick up the lunch and take it out.

J. Glennon McKenna, an attorney, testified that over the years he had on occasions been in Mr. Bogy's home. He saw plaintiff there several times. He further stated that, "As far as what I saw, I have no recollection of any services being rendered from any particular actions that I saw. * * * At times, when I would be there, when I came in he would leave. * * * From the conversation that I had with Mr. Bogy, he said at times that he brought meals to him."

William L. Roberts, a letter carrier, lived at 1312 Bayard Avenue, next door to Mr. Bogy. He testified that during the period from 1950 to the early part of 1956 he saw plaintiff at Mr. Bogy's house. He stated he would see plaintiff going back and forth doing something for Mr. Bogy approximately every day. He saw plaintiff go into the house with a bag of some sort, and go out in back with a waste basket or garbage, and "tinkering with something— some locks on the doors, or door knobs, or something of that sort." He stated that plaintiff would go to the Bogy home from work, between 2:00 and 2:30 and leave usually about two or three hours later. On several occasions Bogy asked the witness to tell plaintiff to stop by his house.

Dauntless Rankin testified he observed plaintiff doing things around the Bogy house; that a lot of times he saw him run errands and go to the store; that he furnished company for Mr. Bogy; that he took Bogy to the barbershop once, and on one occasion to the bank. The witness further testified: "I seen him do things like rake a few leaves from the front yard. Maybe take out accumulated papers, and take out some bottles, empty beer bottles; he had an occasional beer there. * * * I do recall him having gone to Hoffman's Market at Aubert and

Maple, and the Howell Egg Company at 4800 Page, and some restaurant on Kingshighway. * * * There was Hagenbach's store at 4704 Easton, he went there, and Watson's he went there, and a store on the north side of Easton and Bayard, he went there—those various places that I know." The witness further testified that in a conversation with Mr. Bogy in 1955 the latter told him he was going to change his will, and that "he said he was going to do something for the people that did something for him; he said—his words were, as I remember it: 'Old John has been helping me and I am going to do something for old John.' Those were his words to me. * * * He said that John had a mortgage on his house, and he said he was going to help with the mortgage. He didn't say he was going to pay it, but he said he was going to help him with the mortgage * * * he said he was going to add a codicil to his will to take care of the people that took care of him."

Augusta Springli, plaintiff's wife, testified that decedent called her on the telephone on many occasions wanting to know where her husband was and that he (Bogy) needed him; that he wanted her husband to get food for him and that he was starving. This went on most of the time from 1950 to 1956. She stated that her husband's working hours were from 6:00 o'clock to 2:00 or 2:30; that before he did services for Mr. Bogy he would always get home around 2:30. After he started doing services for Mr. Bogy he would get home most of the time around 5:00 or 5:30. She testified she had a conversation with Bogy in 1952 in which conversation "he told me at that time that my husband was so kind and good to him, that he would remember him, that he had talked to my husband and asked him if he had his home paid for and he said, 'No, I have a mortgage,' and he asked him how much, and he told him, so he told me he would remember him in his will, that he would see we got our home paid for—get the mortgage paid for, for being so nice to

him." The witness further testified that the mortgage was "close to eight thousand dollars."

Plaintiff offered no evidence of the reasonable value of his services. The court, on April 30, 1959, entered the following judgment:

"This cause having heretofore been tried before the court on the 10th day of April, 1959, and having been submitted to the court upon the pleadings, evidence and proof adduced, and on said last mentioned date having been taken under advisement and now at this day the court being sufficiently advised of and concerning the premises, doth find in favor of plaintiff for services rendered for five and one-half years at the rate of forty dollars per month, making a total judgment of $2,640.00 Dollars.

"Wherefore, it is considered and adjudged by the court that the plaintiff have and recover of the defendant the sum of $2,640.00 Dollars, together with the costs of this proceeding, and that execution issue therefor."

At the trial below plaintiff offered to prove that at the time of Mr. Bogy's death his estate was valued at $1,546,652. An objection to this offer was sustained, and this ruling is here assigned as error. In support of this contention, it is urged that the proposed evidence was relevant on the issue of deceased's intent to pay for the services rendered and on the measure of damages.

■■ It is a cardinal principle of our jurisprudence that the rich and poor must stand alike in the courts of this state; and the general rule, as stated in the authorities, is that evidence of the pecuniary circumstances of the parties is not ordinarily admissible in actions on contracts, either express or implied. 20 Am.Jur., Evidence, § 259, p. 250. There may be certain exceptions in actions for services rendered, as where there is a recognized usage obtaining to graduate professional

charges with reference to the financial condition of the person for whom such services are rendered. But in such cases there should be shown a usage long established and so universally acted upon as to have ripened into a custom of such character that it might be said that the services were rendered and accepted in contemplation of it. No such case is presented in the instant suit. The services performed did not require any high degree of skill, and certainly were not of a character which, according to usage and custom, call for a graduated charge. There is no more reason why the charge in this case should be enhanced on account of the deceased's ability to pay than that a merchant should charge him more for an article of commerce in daily use by all members of the public. Under Count II of the petition, if plaintiff was entitled to recover, he was only entitled to recover the reasonable value of the services performed. The measure of this recovery should be the worth recognized by the public generally, without reference to the pecuniary standing of the parties.

■ But plaintiff urges that the proposed evidence was admissible on the question whether there was an intent to pay. In support of this contention there is cited the case of Allmon v. Allmon, Mo.App., 314 S.W.2d 457. In that case the court said that the financial status of the deceased and his ability to pay should not be overlooked in the determination of such issue. We need not decide whether such rule should be applied under the facts of this case. Suffice it to say that since the trial court found for plaintiff, it must have found that Bogy intended to pay for the services rendered. Therefore, if there was error in the exclusion of the evidence offered, it was not prejudicial. Under Section 512.160 RSMo 1949, V.A.M.S., we cannot reverse any judgment unless we believe that error was committed against the appellant which materially affected the merits of the action. We do not believe that the rights of plaintiff were prejudiced by the exclusion of this evidence.

At the trial, the court, over plaintiff's objection, permitted defendant to read into the record a paragraph from a petition filed in the suit of Margaret Pohlman v. Mercantile Trust Company, Executor of the Estate of Bernard P. Bogy. This was a suit then pending in the Circuit Court of the City of St. Louis, and was for alleged services rendered to Mr. Bogy by Mrs. Pohlman from September, 1951, until the date of his death, May 4, 1957. Those services, as alleged, were of the same type as those claimed to have been performed by plaintiff herein. Plaintiff objected to this evidence, on the ground that it was immaterial and irrelevant to the issues on trial; that it was not the best evidence and was hearsay. Those same objections are urged here as grounds for reversal. Plaintiff contends that the admission of the evidence was prejudicial because of its influence on the mind of the trial judge on the question of damages.

■ The evidence was not relevant, and it was clearly error to admit it. However, its admission does not call for a reversal of the judgment. Since this is a jury-waived case it is our duty to review the case upon both the law and the evidence, as in suits of an equitable nature (Sec. 510.310, subd. 4 RSMo 1949, V.A. M.S.) and, if possible, give such judgment as in our opinion the pleadings and the evidence warrant. Sec. 512.160 RSMo 1949, V.A.M.S.; Wells v. Goff, 361 Mo. 1188, 239 S.W.2d 301. In other words, it is our duty to try the case de novo on the record presented. And in this connection, any incompetent testimony admitted or considered by the trial court will be disregarded. Minor v. Lillard, Mo.Sup., 289 S.W.2d 1; Middelton v. Reece, Mo.Sup., 236 S.W.2d 335; Boggess v. Cunningham's Estate, Mo. App., 207 S.W.2d 814; Drainage Dist. No. 28 of New Madrid County v. Drainage Dist. No. 23 of Stoddard County, Mo.App., 146 S.W.2d 858. Also, in deciding the case, we will adhere to the rule which casts upon plaintiff the duty of proving his case by a preponderance of the credible evi-

dence, which rule was apparently not applied by the trial court. Reighley v. Estate of Fabricius, Mo.App., 332 S.W.2d 76.

■ With the foregoing rule in mind, we have examined the evidence in this case and find that the trial court properly decided the issues in favor of plaintiff, and that its award of damages was proper. In our opinion, such amount represents the reasonable value of the services rendered. It appears, however, that the trial court failed to allow interest. Where one is liable for the reasonable value of services, he is under a legal duty to liquidate the sum due, and interest should be allowed from the time when he should have paid. Laughlin v. Boatmen's Nat. Bank of St. Louis, 354 Mo. 467, 189 S.W.2d 974. In the case at bar, there was no demand by plaintiff prior to filing suit. Therefore, plaintiff should be allowed interest from the date of the institution of his suit. Trimble v. Kansas City, P. & G. R. Co., 180 Mo. 574, 79 S.W. 678; Mecartney v. Guardian Trust Co., 274 Mo. 224, 202 S.W. 1131; Laughlin v. Boatmen's Nat. Bank of St. Louis, supra.

■ As heretofore stated, the petition in this suit was in two counts. Count I sought recovery on an express contract. Count II was in quantum meruit for the reasonable value of services rendered. The judgment was for services rendered, and must be considered as responsive to the issues raised by Count II. No disposition was expressly made by the trial court of Count I. However, since recovery could not be had on both counts, and there was a recovery on Count II, it follows that there was an effective disposition of Count I, though not expressly spelled out. The court, in its judgment, should have ordered that plaintiff take nothing under Count I, and expressly stated that the judgment entered was on Count II. See Memphis Bank & Trust Co. v. West, Mo.App., 260 S.W.2d 866; Commercial Nat'l Bank of Kansas City v. White, Mo.Sup., 254 S.W.2d 605.

The judgment appealed from is reversed and the cause remanded with directions to the trial court to enter a new judgment in favor of defendant on Count I of the petition, and in favor of plaintiff on Count II in the sum of $2,640, with interest thereon from February 28, 1958, the date said suit was filed.

RUDDY, J., and SAM C. BLAIR, Special Judge, concur.