Catherine McCAFFREY,
Plaintiff-Respondent,

v.

The ESTATE of Clarence E. BRENNAN,
Defendant-Appellant.

No. 36534.

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 3, 1976.

Cook, Murphy, Lance & Mayer, Arthur S. Margulis, Stephen C. Murphy, Donald J. Gunn, Jr., St. Louis, for defendant-appellant.

Kramer, Chused, Shostak & Kohn, Burton H. Shostak, James A. McDowell, St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal from a judgment in favor of plaintiff-respondent in a civil action based on quantum meruit for services against defendant-appellant, a decedent's estate. For the reasons discussed below, we reverse and remand for a new trial.

Plaintiff Catherine McCaffrey performed services for the decedent Clarence E. Brennan both in his private affairs as an individual and in his business. The services rendered the business, "Spry Farms," covered the period from August 1963 to August 1969, when the business was sold by the decedent. These services consisted, generally, of duties as a saleswoman and bookkeeper at the business, which was a retail pet supply store. Specifically, plaintiff's duties included making sales, checking invoices and purchase orders, supervising inventory, handling banking and payroll responsibilities and various tax reports, handling collections, and negotiating the sale of the business. Services allegedly rendered the decedent as an individual consisted of banking and bill-paying, running errands, chauffeuring, and visiting the decedent in a hospital and nursing home. These services were rendered continuously during the period August 1963 to January 1972. Plaintiff was never paid for any of the above services, but the decedent had promised to make "adequate provision" in his will.

Mr. Flynn was employed as an attorney for "Clarence E. Brennan doing business as Spry Farms," and subsequently for Clarence E. Brennan's estate. Mr. Flynn represented the Brennan account in a variety of suits and legal matters from May 1967, up to the time the business was sold. On April 19, 1969, at the request of decedent's brother, Mr. Flynn prepared a power of attorney running from decedent to plaintiff. Mr. Flynn met with the decedent only twice. On these occasions, plaintiff was in their presence; and, on one occasion decedent's brother was "not in hearing distance but there." Otherwise, all of Mr. Flynn's contacts were with plaintiff, who furnished him information. For his work, Mr. Flynn billed Spry Farms, and the bills were paid by plaintiff under the power of attorney from the decedent.

Mr. Flynn prepared a will for Clarence Brennan, also at his brother's request. This will included a bequest for plaintiff. The apparent amount of this bequest was $10,000. This will was, however, never executed.

Following the death of Clarence Brennan, plaintiff filed a quantum meruit claim against his estate for $24,413.50. At trial, Betty McNamara, the bookkeeper who had prepared tax returns for "Clarence Brennan doing business as Spry Farms," testified extensively concerning various financial aspects of the business, including her estimate that the decedent's net worth was over $200,000.00. This latter the judge ordered stricken and instructed the jury to disregard it. Plaintiff also called Mr. Flynn as a witness. He was permitted to testify, over frequent objections of counsel, that he had prepared a will for the decedent at the direction of decedent's brother, that the will was never executed, and that the will contained a bequest of money for plaintiff. The unexecuted will was never admitted

nor was the amount of any bequest to plaintiff identified for the jury. In his final argument to the jury, plaintiff's counsel made the following statement: "[Y]ou will recall Mr. Flynn testified he prepared a will and it had a provision in it for Catherine McCaffrey and it was a substantial provision." Following objection and motion for mistrial by counsel for the estate, the trial court instructed the jury to disregard the word "substantial." Forty-five minutes into its deliberations, the jury requested the unexecuted will. Ten minutes after the trial court denied this request, the jury returned a verdict for plaintiff of $25,-000.00. Plaintiff remitted $2,500.00, and judgment was entered for plaintiff for $22,-500.00.

On appeal, defendant has three contentions. First, defendant contends that the trial court erred in admitting Ms. McNamara's testimony concerning the size of decedent's estate and other financial matters of decedent, for the reason that such evidence was irrelevant, immaterial, and prejudicial to defendant. Second, defendant contends that the trial court erred in admitting the testimony of Mr. Flynn regarding the preparation for decedent of an unexecuted will, for the reason that its use was barred by the attorney-client privilege. And finally, defendant asserts that plaintiff's attorney's reference in final argument to a "substantial" provision for plaintiff in decedent's will was so manifestly prejudicial that the trial court abused its discretion in denying defendant's counsel's request for a mistrial.

■ Regarding defendant's first contention, we note initially that the most damaging testimony, Ms. McNamara's assigning a value of $200,000.00 to the estate, was in fact not admitted but was stricken. At that time, defendant's counsel did not request a mistrial; therefore, the trial court granted defendant all the relief it requested. The evidence which was admitted included the gross sales and personal taxable income of the decedent over the period in question and the sale price of the real estate for Spry Farms. Plaintiff relies on *Allmon v. Allmon*, 314 S.W.2d 457 (Mo.App. 1958), to justify the introduction of testimony concerning the financial affairs of the decedent; her rationale is that this goes to decedent's intent to pay for the services. However, in *Allmon*, unlike the case at bar, the plaintiff was related to the decedent. This is significant because, absent a family relationship, the law presumes an intent to pay for the services. See *Kopp v. Traders Gate City Nat. Bank*, 357 Mo. 659, 210 S.W.2d 49 (banc 1948); *Vosburg v. Smith*, 272 S.W.2d 297 (Mo.App.1954).[1] Intent to pay for the services was not at issue; therefore, the evidence of decedent's financial condition was immaterial. Furthermore, its admission may have been prejudicial to defendant. In a suit in quantum meruit, the sole measure of recovery should have been the market value of the services rendered. Evidence concerning decedent's ability to pay not only would have been no criterion as to the value of plaintiff's services but also could have influenced the jury to award greater damages on a basis not warranted by the merits. *Springli v. Mercantile Trust Co.*, 333 S.W.2d 311, 314–15 (Mo. App.1960); *Runnels v. Allen's Estate*, 184 S.W.2d 740, 743–44 (Mo.App.1945). On remand, this evidence should be excluded. However, because we choose to base our reversal explicitly on attorney-client privilege, we need not decide whether such evidence by itself would have been so prejudicial as to warrant a new trial. *Macy v. Day*, 346 S.W.2d 555 (Mo.App.1961).

■ Defendant's second contention is that Mr. Flynn's testimony concerning the preparation of an unexecuted will was inadmissible because of the attorney-client privilege.[2] We agree.

1. See generally Annot., 65 A.L.R.2d 945 (1959); Annot., 7 A.L.R.2d 8 (1949).

2. The privilege is statutory in Missouri: § 491.060(3), RSMo 1969. "The following persons shall be incompetent to testify: (3)

A client has a privilege to refuse to disclose, and to prevent others from disclosing, confidential communications between himself or his representative and his lawyer or his representative. The attorney-client relationship with respect to the attorney's preparation of a will survives the death of the client and bars testimony of the attorney where, as here, one of the parties asserts a claim adverse to the interests of the client's estate. *Runnels v. Allen's Adm'r*, 169 S.W.2d 73 (Mo.App.1943). The privilege may be claimed by the personal representative of a deceased client. Defendant's attorney made numerous specific objections to Mr. Flynn's testimony. Therefore, if an attorney-client relationship existed between Mr. Flynn and decedent, the privilege was properly raised by defendant's estate.

Plaintiff attacks the creation of an attorney-client privilege in two ways, both of which are unavailing. Initially, she asserts that the only attorney-client relationship concerning decedent's will existed between Mr. Flynn and decedent's brother, apparently because he requested its preparation. No authority is cited for this proposition, but rather she relies on the trial court's finding of competency of Mr. Flynn. It is true that, where the evidence is sufficient to justify a finding that the witness was competent, it cannot be said that the trial court abused its discretion. *Ashley v. Williams*, 365 Mo. 286, 281 S.W.2d 875 (1955). But here the evidence does not justify such a finding. Mr. Flynn's representation of decedent began in 1967 with a telephone call directly from Clarence Brennan. Subsequently, he represented the deceased in a variety of legal matters and maintained an extensive file entitled "Clarence E. Brennan doing business as Spry Farms," which included the unexecuted will. He billed

Spry Farms for his work and was compensated by plaintiff under the power of attorney from decedent. At trial, Mr. Flynn testified that he was employed by deceased, and at no time did he suggest that he represented either plaintiff or decedent's brother. These facts demonstrate that decedent was the client. Furthermore, there is authority that, as a matter of law, the making of a will cannot be delegated to another.[3] Therefore, although the trial court did not state reasons for its ruling that Mr. Flynn was competent to testify, to the extent that this ruling may have reflected an assumption that no attorney-client relationship existed between Mr. Flynn and the deceased, it was erroneous.

Plaintiff then asserts that, even if an attorney-client relationship existed between Mr. Flynn and the deceased regarding preparation of the will, the privilege was destroyed by plaintiff's presence during their communications and her supplying of information to Mr. Flynn directly. As a general rule, the privilege is destroyed by the presence and hearing[4] of third persons, on the ground that the communication was never intended to be confidential. *Canty v. Halpin*, 294 Mo. 118, 242 S.W. 94 (banc 1922); 58 Am.Jur. "Witnesses," § 492, at p. 275. However, preparation of a will is typically a matter which a client would expect to be confidential and therefore privileged. *Doyle v. Reeves*, 112 Conn. 521, 152 A. 882 (1931). And the "rule as to the absence of privilege where a third person is present does not apply when the third person is the confidential agent of either the client or the attorney."[5] Similarly, "[w]hen a communication meets all the legal requirements entitling it to be privileged when made directly between an attorney and his client, it is equally privileged when the communication is made through the client's agent or em-

---

An attorney, concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client; . . .."

**3.** I. F. Mechem, A Treatise on the Law of Agency, § 126 (2d Ed. 1914).

**4.** Deceased's brother's presence on one occasion, "not in hearing distance but there," clearly does not come within this rule.

**5.** 58 Am.Jur., "Witnesses," § 493, at 276.

ployee." Id. § 498, at 279. See also *Baird v. Koerner,* 279 F.2d 623 (9th Cir. 1960); *Missouri K. & T. Ry. Co. v. Williams,* 43 Tex.Civ.App. 549, 96 S.W. 1087 (1906).[6] In other words, it is the function of the third party—his relationship to the client—which determines whether the privilege encompasses communications made by, or in the presence of that third party. During the entire claim period, decedent held plaintiff in a position of trust and authority such that her agency would be implied. Beginning April 19, 1968, her agency was validated by a blanket power of attorney running from decedent to her. See *Smith v. United States,* 113 F.Supp. 702 (D.Hawaii 1953).[7] See also *Prior v. Hager,* 440 S.W.2d 167, 173 (Mo.App.1969). All of plaintiff's dealings with Mr. Flynn were pursuant to her agency relationship to the deceased. Therefore, these communications were encompassed within the attorney-client privilege. The privilege was neither destroyed by her presence nor waived by failure to object. Mr. Flynn's testimony should have been barred by the attorney-client privilege.

The conclusion is inescapable that Flynn's testimony had a substantial and prejudicial impact on the jury. His testimony comprises over ten percent of the entire record. He was permitted to describe work done by plaintiff with regard to the decedent's legal and business affairs that would otherwise not have been before the jury. And most importantly, his testimony concerning the unexecuted will could not help but suggest to the jury that the decedent had intended to take care of plaintiff at the time of his death but, for undisclosed reasons, failed to do so. This inference alone was so prejudicial as to require reversal. See *Doyle v. Reeves,* supra and *In re Smith's Estate,* 263 Wis. 441, 57 N.W.2d 727 (1953).

▮ Then, plaintiff's counsel, by referring to the amount, without any basis in the record, as "substantial" took the last step toward impressing the jury that plaintiff deserved a large recovery because the decedent would have wanted it that way. As Mr. Flynn, however, will not be testifying on remand, this error will not recur. Therefore, we need not decide whether merely instructing the jury to disregard these words of plaintiff's counsel adequately remedied the error. *Esstman v. United Rys. Co. of St. Louis,* 220 S.W. 508 (Mo.App. 1920).

For the reasons stated above, we reverse and remand for a new trial not inconsistent with this opinion.

SIMEONE, P. J., and GUNN, J., concur.

---

**6.** 2 F. Mechem, *supra,* at § 2308.

**7.** 3 Am.Jur.2d, Agency, § 23; 1 F. Mechem, *supra,* at § 35.