[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned administrative appeal concerns the legality under the Connecticut Freedom of Information Act of a meeting held in executive session to discuss a proposed request for proposals ("RFP"). The plaintiff Hartford Board of Education ("Board") and several of its members who were ordered to pay fines claim that the defendant Freedom of Information Commission ("FOIC") erred in interpreting the Freedom of Information Act as precluding the exclusion of the public from the discussion at issue. The parties who filed complaints with the FOIC, Rick Green, the Hartford Courant, and the Hartford Federation of Teachers, have also been named as defendants.
History of the Proceedings
The Board filed a notice of a meeting to be held on May 31, 1994. The notice indicated that the Board planned to meet in executive session (that is, excluding the public, pursuant to General Statutes § 1-18(e)) to receive a confidential communication from the corporation counsel, specifically a document constituting an RFP for a public-private partnership to manage the Hartford Public Schools.
On May 18, 1994, the Board, by resolution, directed the city's purchasing agent to go out to competitive bid through an RFP to manage the Hartford public schools. (Record, Doc. 23, p. 8.) A task force which included two Board members was created to complete this task, and that group caused the RFP to be prepared by lawyers in the office of the Corporation Counsel for presentation to the Board, which had authority to reject, amend, or authorize the document to be issued as drafted as the Board's RFP for private management services. After making a finding that the public's interest in disclosure did not outweigh the perceived necessity of confidentiality with regard to the document, the Board discussed the document in executive session on May 31, 1994 with a lawyer from the office of the corporation counsel and made some changes to it before adopting it as the RFP to be issued to prospective bidders. At the conclusion of the executive session the Board gave the amended document to the reporter from the Hartford Courant, Rick Green.
On July 2, 1994, Mr. Green and the Hartford Courant filed a complaint with the FOIC complaining that the Board and its individual members had violated the Freedom of Information Act, specifically, General Statutes §§ 1-18(a) and -18(e) and 1-21
CT Page 2517 when it held the executive session on May 31 to receive and discuss the proposed version of the RFP concerning a contract with private management company to manage the Hartford Public Schools. On June 7, 1994, the Hartford Federation of Teachers filed a complaint raising the same issue and naming the Board and its individual members as respondents.
The two complaints were consolidated and heard together on December 27, 1994 and January 13, 1995 by a hearing officer of the FOIC. On March 23, the FOIC issued the hearing officer's proposed findings. In that document, the hearing officer found the executive session to have been a violation of the FOIA and proposed that "the respondents" jointly be fined $50.00 and ordered to comply with the FOIA with respect to executive sessions in the future. (Record, Doc. 24. p. 6.) Counsel for the Board and its members argued against the fine, and two Board members pointed out that they had voted against the executive session. The findings and decision were amended and a final decision was issued by the FOIC on April 5, 1995. In the final decision as to the complaint filed by Mr. Green and the Hartford Courant, the FOIC imposed a $25.00 fine against each Board member who had voted to go into executive session. (Record, Doc. 26, page 6.)
The FOIC ruled that the executive session was legal only if the document that the Board had met to discuss at that session was one exempt from disclosure. The Board claimed that the document was a preliminary draft and was exempt pursuant to §1-19(b)(1). The FOIC found that the draft submitted to the Board was "the task force's final draft of the RFP" (Record, Doc. 26, para. 17) and that it had been submitted to the Board "with the intention that it either be approved, as is, or modified and then approved." (Id.)
The FOIC found that "the draft RFP was the RFP recommended by the office of the corporation counsel through the purchasing director to the [Board]," (Record, Doc. 26, para. 31) and that the "recommended RFP comprised part of the process by which decision to hire a private manager for the Hartford Public Schools would be formulated." (Record, Doc. 26, para. 33.)
The FOIC concluded that the document was not exempt pursuant to § 1-19(b)(1) whether or not it was a preliminary draft because § 1-19(c) requires disclosure of "interagency or intra-agency reports or recommendations comprising part of the CT Page 2518 process by which governmental decisions and policies are formulated" and that the exceptions to this rule did not apply. The FOIC rejected the Board's claim that the draft RFP was exempt because it was subject to the attorney-client privilege pursuant to § 1-19(b)(10). The FOIC found that the attorney-client privilege did not apply because "the draft RFP does not on its face contain any confidential information or communications, or reference to any confidential communications or information." (Record, Doc. 26, para. 39.)
The FOIC found that "nothing in the FOI Act permits an agency to meet in executive session to preview documents before they are released to the public or the parties involved." (Record, Doc. 26, para. 47.) The FOIC concluded that the meeting in executive session violated the FOIA and, as to both complaints, ordered the respondents to comply with the FOIA in the future. The FOIC also imposed fines against respondents Meagher, Dickerson, Flores-Sepulveda, Carroll, Evans and Lightfoot. The Board and the members who had been ordered to pay fines filed this appeal on May 24, 1996.
Aggrievement
Aggrievement is not contested and the court finds that the plaintiffs are aggrieved the declaration that they acted illegally and by the imposition of civil penalties. Rose v. FOIC,221 Conn. 217, 223 (1992); Zoning Board of Appeals v. FOIC,198 Conn. 498, 502 (1986).
Standard of Review
Judicial review of the rulings of the Freedom of Information Commission is governed by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq., and the scope of that review is limited. Ottochian v. Freedom of InformationCommission, 221 Conn. 393, 397 (1992); Board of Education v.Freedom of Information Commission, 208 Conn. 442, 452 (1988). The reviewing court is limited to deciding whether the commission, in issuing its order, acted unreasonably, arbitrarily or illegally or abused its discretion. Ottochian v. Freedom of InformationCommission, 221 Conn. 397; Cos Cob Volunteer Fire Co. No. 1 v.Freedom of Information Commission, 212 Conn. 100, 104-105 (1989).
"Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct CT Page 2519 application of the law to the facts found and could reasonably and logically flow from such facts." Id., citing New Haven v.Freedom of Information Commission, 205 Conn. 767, 774 (1988). The court is not to retry the case or substitute its own judgment for that of the administrative agency. Ottochian v. Freedom ofInformation Commission, 221 Conn. 397-98; C H Enterprise, Inc.v. Commissioner of Motor Vehicles, 176 Conn. 11, 12 (1978).
However, where the FOIC has departed from general principles of statutory construction in reaching its interpretation of the statute it enforces, deference is not to be given to its interpretation, Connecticut Alcohol Drug Abuse Commission v.FOIC, ("CADAC"), 233 Conn. 28, 39 (1995); Bridgeport Hospital v.Commission on Human Rights and Opportunities, 232 Conn. 91, 110
(1995).
In CADAC, the Supreme Court faulted the trial court for giving "undue deference" to the FOIC's interpretation of a provision of the Freedom of Information Act because the FOIC's interpretation of the statutory exemption at issue failed to comport with general principles of statutory construction. CADAC,233 Conn. 42. Similarly, in Gifford v. Freedom of InformationCommission, 227 Conn. 641, 652 (1993), the Supreme Court found that the FOIC's interpretation of a statutory exemption was properly rejected by the reviewing court where that interpretation did not accord with well-settled principles of statutory construction. See also University of Connecticut v.Freedom of Information Commission, 217 Conn. 322, 328 (1991).
In Elections Review Committee of the Eighth UtilitiesDistrict v. FOIC, 219 Conn. 685, 698 (1991), the Supreme Court explained that "[w]e are not bound by the interpretation of an agency on questions of law, such as interpretation of a statute" and found that the FOIC's interpretation in that case was not supported by the legislative history of a particular provision of the Freedom of Information Act. Id.
The burden of proving the applicability of an exception to the duty to disclose rests upon the party claiming the exception.Rose v. Freedom of Information Commission, 221 Conn. 217, 232
(1992); Hartford v. Freedom of Information Commission, 201 Conn. 421,431 (1986); Maher v. Freedom of Information Commission,192 Conn. 310, 315 (1984).
1. Claim of Exemption as a Preliminary Draft
CT Page 2520
Pursuant to General Statutes § 1-18a(e) an "executive session" is a meeting of a public agency at which the public is excluded for one or more of the purposes listed in that section. The only topic listed in § 1-18a(e) that the Board claims authorized the executive session at issue is subsection (5): "discussion of any matter which would result the disclosure of public records or the information contained therein described in subsection (b) of section 1-19."
General Statutes § 1-19(b) provides exemptions from the duty to disclose for a number of listed items. The exemption which the Board claimed was applicable to the draft of the RFP and which therefore authorized the executive session is as follows
 § 1-19(b)(1): "preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure."
Several exceptions to the above provision are stated in § 1-19(c), including the following:
 Notwithstanding the provisions of subdivision (1) of subsection (b) of this section, disclosure shall be required of (1) interagency or intra-agency memoranda or letter, advisory opinions, recommendations or any report comprising part of the process by which governmental decisions and policies are formulated, except disclosure shall not be required of a preliminary draft of a memorandum, prepared by a member of the staff of a public agency, which is subject to revision prior to submission to or discussion among the members of such agency.
With regard to the claim that the draft RFP submitted by the task force to the Board for discussion was a "preliminary draft" within the meaning of the provision cited above, the FOIC found that the draft was not preliminary because it was not a draft of what the task force might submit to the Board but rather the text of its final recommendation. (Record, Doc. 26, para. 27.)
This characterization of the document at issue is amply supported by the record and by the findings of the FOIC. Thomas Cox, an attorney employed in the office of the Corporation CT Page 2521 Counsel of the City of Hartford, testified that he and another lawyer from his office were assigned to work with a task force including the City's finance director and purchasing agent, a representative of the superintendent of the Hartford Public Schools, two members of the Board of Education, and a consultant from Coopers and Lybrand who had been hired by the City Manager. Attorney Cox testified that using RFPs from similar ventures elsewhere that were furnished by Coopers and Lybrand and examples of RFPs used to hire architects or engineers, the two attorneys drafted a proposed RFP "which reflected what the assembled group [task force] thought made sense in terms of sort of the outlines or the parameters of what private management of a public school system might look like." (Record, Doc. 23, p. 9-10.)
No witness testified to the effect that the proposed RFP was subject to being amended by the task force after it was presented to the Board of Education. If the task force is considered to be a part of the Board of Education, the draft RFP was an intra-agency recommendation or report from the task force to the Board. If the task force was a separate agency of the City of Hartford, the draft RFP was an interagency report or recommendation.
While the Board asserts that the draft RFP was subject to being amended or modified by the Board, it does not claim that it was subject to being amended by the task force. General Statutes § 1-19(c) does not exempt drafts that are subject to final revision by the public agency when it considers them, as the Board claims. Rather, the exemption for preliminary drafts identified in § 1-19(c) is only for drafts that the submitter may revise before submission to the agency to which the draft is to be submitted.
In asserting that the FOIC incorrectly found the document not to be exempt, the Board cites Wilson v. Freedom of InformationCommission, 181 Conn. 324 (1980). The construction of the exemption for preliminary drafts stated in that ruling provides little or no guidance in this case because a year after that case was decided the General Assembly amended § 1-19(c) to provide a new definition, set forth above, of the exemption for preliminary drafts. See P.A. 81-431.
This court finds that the FOIC's conclusion that the draft RFP was not exempt as a preliminary draft is supported by substantial evidence as to the nature of the draft and by an application of the law consonant with the wording of § 1-19(c). CT Page 2522
2. Claim of Attorney-Client Privilege
The Board claims in the alternative that the draft RFP was exempt from disclosure and could therefore be discussed in executive session because it represented a privileged communication from the Board's attorney.
General Statutes § 1-19(b)(10) exempts from disclosure and, by operation of § 1-18a(e)(5), permits discussion in executive session of "communications privileged by the attorney-client relationship." The words of this exemption make it clear that all communications from an agency's counsel are not exempt; rather, only communications that are "privileged by the attorney-client relationship" are exempt.
An exemption is therefore not established merely by showing that a document was drafted by legal counsel. Rather, the statutory exemption applies only if a document was drafted under conditions that gave rise to a privilege.
It is useful to set forth a definition of the term "privileged communication". According to Wigmore, the term applies as an evidentiary rule as follows: "[W]here legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection be waived." 8 Wigmore, Evidence, §§2292, p. 554 (1961).
The Connecticut Supreme Court has held that the attorney-client privilege is limited to communications between attorney and client and only as to communications that constitute "disclosures necessary to obtain informed legal advice." Ullmannv. State, 230 Conn. 698, 712-713 (1994). Not all communications from the attorney to his or her client are privileged:
 A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, only if it were shown to be inextricably linked to the giving of legal advice.
Ullmann v. State, 230 Conn. 713, citing Turner's Appeal, 72 Conn. 305,318, 44 A. 310 (1899). CT Page 2523
In order to establish that the privilege applies, the client must demonstrate that the communication of fact at issue "was inextricably linked to the giving of legal advice [by the attorney to the client.]" Ullmann v. State, 230 Conn. 714.
The Board, without citing Ullmann v. State, claims that where a client asks for legal advice and that advice takes the form of a proposed draft of a document, the document is privileged. The Board relies on the ruling in Doyle v. Reeves, 112 Conn. 521, 523
(1931) that an unexecuted draft of a will was protected by the attorney-client privilege. The reasoning of that ruling has not, however, been shown to be applicable with regard to the document at issue in the case under review by this court. In Doyle v.Reeves, the Supreme Court reasoned that if the client's instructions to the lawyer about the contents of the draft of a will were privileged, the draft reflecting those instructions was likewise privileged. The Court stated, Doyle v. Reeves,112 Conn. 525:
 [t]he contents of the draft of the will, here, as of the codicil in the case just cited [Collins v. Collins, 110 Ohio St. 105, 143 N.E. 561, 38 A.L.R. 230, 242] are of necessity the result of information given and the desires expressed by the client and advice afforded and professional skill exercised by the attorney, and so, in another form, were communications between client and counsel.
The holding in Doyle v. Reeves unmistakably arises from the fact that in that case the client instructed the lawyer what to put into the document and the document was a direct reflection of the client's communication of his desires to the attorney who drafted the document. In other words, the contents of the draft of the will were a memorialization of the client's communication to the attorney and were privileged for that reason.
The Board seeks to expand the rationale of Doyle to a document that has not been shown to reflect the client's communication to the lawyer but is a suggestion by the lawyer as to how the client's purpose may be achieved. It has been held, however, that where a lawyer drafts an instrument for a client as a scrivener, as in the drafting of a deed, the document is not privileged, even though the document must of necessity have proceeded from some direction by the client to the lawyer. Finev. Moomjian, 114 Conn. 226, 233 (1932). CT Page 2524
The requisite for the attorney-client privilege is thus that the document must be shown to be the product of the communication between the client and the attorney, reflecting the substance of the communication by the client. The Board contends that by asking the task force to propose a draft RFP which was drafted by the office of the corporation counsel, it communicated with counsel and that the proposed RFP should therefore be seen as the equivalent of the unexecuted will in Doyle. The record does not, however, support this version of the history of the creation of the document. Nothing in the record indicates that the Board advised counsel what to put into the document at issue: the requisite element of communication by the client to the attorney is therefore lacking. The record supports the conclusion of the FOIC that the Board at most asked the task force to come up with a proposal to accomplish the desired result of private management of the public schools, and that lawyers of the office of the corporation counsel were the scriveners for the task force.
The Board further suggests that by including particular features in the draft RFP, the staff of the office of the corporation counsel was giving the Board legal advice. The preparation of the deed at issue in Fine v. Moomjian, 114 Conn. 226, similarly gave the client the "advice" that the desired transfer of property could be legally accomplished by the text of the deed prepared, however the document was not viewed as privileged because it did not reflect a communication from the client.
It must be noted that the Board's interpretation would shelter from disclosure virtually every document drafted by counsel for an agency if the contents of counsel's drafting were recognized as legal advice to the client. The Freedom of Information Act exempts "communications privileged by the attorney-client relationship" in General Statutes § 1-19(b)(10). If the words of that exemption were construed to cover ever, v document drafted by an agency's counsel, the universe of documents reflecting public issues that could be discussed in secret would be a broad one indeed. Because the Connecticut Supreme Court has required the showing that the document for which the privilege is claimed must reflect the confidential communication of the client, and because the record contains quite a different history, this court finds that the FOIC correctly rejected the claim that the privilege applied. CT Page 2525
3. Propriety of Fines Against Board Members
The plaintiffs listed as a ground of their appeal that the imposition of fines against those Board members who voted to go into executive session was "done in violation of the procedures therefor under the FOIA and would otherwise deprive the respondents of their property without due process of law in violation of the United States and Connecticut Constitutions." (Complaint, para. 14e.)
The Board and its members have not briefed this claim of violation of procedures and of the requisites of due process of law. Claims not briefed on appeal are deemed abandoned; Cannatav. Department of Environmental Protection, 215 Conn. 616, 620 n. 6 (1990); Rodriguez v. Mallory Battery Co., 188 Conn. 145, 149
(1982); Burke v. Avitabile, 31 Conn. App. 675, 772 (1993).
This court finds, however, that the individual board members did receive notice that they were respondents and were therefore subject to the sanctions specified in General Statutes §1-21i(b)(2).
At oral argument, their counsel conceded that the Board members all received notice of the claims of violations of the FOIA made against them individually. As counsel, she represented the interests of the individual Board members as well as those of the Board as a whole when the issue of fines was argued after the FOIC issued its proposed final decision.
The court finds that the individual respondents had notice and that they have not proven a violation of any procedure governing FOI proceedings, nor have they established the constitutional violations claimed.
The court notes that the plaintiffs have not claimed that the FOIC failed to make the required finding of lack of reasonable grounds, nor is any claim in their appeal directed to the determination that fines should be imposed.
4. Claim of Exemption for Public Supply Contracts
In the various grounds for appeal listed at paragraph 14 of their complaint, the plaintiffs have included a claim that the FOIC found without evidence that the RFP was "not relative to a public supply contract and thus exempt from disclosure pursuant CT Page 2526 to C.G.S. § 1-19b(7)."
The plaintiffs have not mentioned this claim in their brief, and it is therefore deemed abandoned. Cannata v. Department ofEnvironmental Protection, 215 Conn. 616, 620 n. 6 (1990);Rodriguez v. Mallory Battery Co., 188 Conn. 145, 149 (1988);Burke v. Avitabile, 32 Conn. App. 765, 772 (1993).
Conclusion
The grounds for appeal briefed by the plaintiffs have not been established and the appeal is dismissed.
Beverly J. Hodgson Judge of the Superior Court